# EXHIBIT "A"

## CONSOLIDATED AMENDED PROMISSORY NOTE

THIS NOTE HEREBY CONSOLIDATES AND REPLACES THAT CERTAIN FUTURE ADVANCE PROMISSORY NOTE ("ACORN FUTURE ADVANCE NOTE") FROM ACORN REAL ESTATE, LLC, A FLORIDA LIMITED LIABILITY COMPANY AND ACORN AT WILLOUGHBY, LLC, A FLORIDA LIMITED LIABILITY COMPANY, IN FAVOR OF SEACOAST NATIONAL BANK, IN THE ORIGINAL PRINCIPAL AMOUNT OF $8,869,925.08 DATED JUNE 23, 2006, WITH THAT CERTAIN FUTURE ADVANCE/AMENDED AND RESTATED PROMISSORY NOTE FROM ACORN REAL ESTATE, LLC, A FLORIDA LIMITED LIABILITY COMPANY IN FAVOR OF BANKATLANTIC, DATED SEPTEMBER 20, 2005, AS MODIFIED, SAID BANKATLANTIC NOTE BEING ASSIGNED TO SEACOAST NATIONAL BANK, (AND SAID BANKATLANTIC NOTE HAVING A CONSOLIDATED OUTSTANDING PRINCIPAL BALANCE AS OF THE DATE HEREOF OF $6,630,074.92). SAID BANKATLANTIC NOTE BY VIRTUE OF ACORN AT WILLOUGHBY, LLC, A FLORIDA LIMITED LIABILITY COMPANY, SIGNING THIS CONSOLIDATED AMENDED PROMISSORY NOTE BEING ASSUMED BY ACORN AT WILLOUGHBY, LLC, A FLORIDA LIMITED LIABILITY COMPANY, AND ACORN REAL ESTATE, LLC, A FLORIDA LIMITED LIABILITY COMPANY JOINTLY AND SEVERALLY. THE TERMS AND CONDITIONS SET FORTH HEREIN SHALL CONTROL THE OBLIGATIONS OF MAKER, AS HEREINAFTER DEFINED, WITH RESPECT TO THE INDEBTEDNESS EVIDENCED BY THE SAID ACORN FUTURE ADVANCE NOTE AND SAID BANKATLANTIC NOTE.

Officer
Initials

Date Due:     June 23, 2008 (subject to option to extend set forth below)

Account #     4000329594
Note #
Principal     $15,500,000.00

1.    **DEBT.** ON THIS 23rd DAY OF June, 2006 FOR VALUE RECEIVED, the Undersigned, Acorn Real Estate, LLC, a Florida limited liability company and Acorn at Willoughby, LLC, a Florida limited liability company, hereinafter called and severally called MAKER, without regard to number or gender, jointly and severally PROMISE TO PAY SEACOAST NATIONAL BANK, or to its order, also referred to as the BANK, from the date of this Note, until paid, the principal sum of Fifteen Million Five Hundred Thousand and no/100 Dollars ($15,500,000.00) plus interest on the unpaid principal balance from the date of this Note until paid, at a fixed rate of Seven and one-half (7.50%) per cent per annum.

2.    **REPAYMENT.** The principal hereof and interest thereon shall be payable as follows: Beginning on July 23, 2006, MAKER shall make accrued interest payments on the 23rd day of each month. These payments shall be made every month until MAKER has paid all of the principal and interest and any other charges described below that MAKER may owe under this Note. If not sooner paid, all outstanding principal, plus accrued interest, and any other charges due under this Note, shall be due and payable in full on the Maturity Date. The Maturity Date is defined for purposes of this Note as the later of: (a) June 23, 2008, or (b) provided MAKER notifies Bank in writing no later than May 23, 2008 that MAKER desires to extend the Loan for an additional six (6) months, and provided MAKER has paid Bank an extension fee of 0.25% of the outstanding balance of the Loan evidenced by this Note existing as of June 23, 2008, and further provided MAKER is not in default under the Loan at the time of such notice or any time thereafter prior to June 23, 2008 and there has been no adverse material financial change in the MAKER, any Guarantor or the collateral securing the Loan evidenced by this Note prior to June 23, 2008, then December 23, 2008. Monthly payments shall be made at P.O. Drawer 9012, 815 S.W. Colorado Avenue, Stuart, Florida 34995-9012, or at a different place if required by the holder of this Note.

Any payment not made within ten (10) days after such payment is due shall be subject to a late charge of five percent (5%) of the amount of such payment.

Unless otherwise provided herein, all payments shall be applied first to interest and lawful charges then accrued and the remainder to principal owed. Interest shall be calculated using a year base of 360 days and charged for the actual number of days elapsed in the interest period but in no event shall interest be due at a rate in excess of the highest lawful rate. As it is the intent of all parties to this obligation to abide strictly by the interest limitations imposed by applicable law, the holder hereof shall not be entitled to collect any interest, advance or forbearance which is in excess of the maximum legal interest rate permitted by applicable law, and the MAKER shall be entitled to a refund of any amount collected hereunder which may be determined to be in excess of that maximum legal interest rate.

MAKER shall have the right to make payments of principal at any time before they are due without penalty. MAKER shall notify BANK in writing of such prepayments at the time they are made.

If any payment is not made in full within <u>ten (10)</u> days of the date due, the entire unpaid principal and accrued interest, less any unearned interest and any interest in excess of the maximum allowed by law and any rebates required by law, shall become immediately due and payable without notice. AFTER MATURITY, INTEREST SHALL ACCRUE ON THE DELINQUENT PRINCIPAL BALANCE AT THE LESSER OF THE HIGHEST LAWFUL RATE OF INTEREST OR 18% PER ANNUM.

3.    <u>COLLATERAL.</u>  As security for the payment of this note, and any renewals, extensions or modifications thereof, and any other liabilities of the MAKER to the BANK, however or whenever created, MAKER hereby grants the BANK a Collateral security interest in that Collateral described in Exhibit "A" attached hereto.

This Note, with interest, is secured by a Mortgage Deed and Security Agreement executed by Acorn Real Estate, LLC, recorded in Official Record Book 2005, Page 2772, Public Records of St. Lucie County, Florida, as modified by that certain Mortgage Modification and Spreader Agreement recorded in Official Record Book 2062, Page 366 and Receipt for Future Advance and Mortgage Modification Agreement recorded in Official Records Book 2406, page 2411, both of the Public Records of St. Lucie County, Florida, and as assigned to BANK and further modified by a Future Advance Notice and Mortgage and other Security Agreements Modification Agreement, of even date herewith and Amended and Restated Commercial Mortgage (and Security Agreement) from Acorn Real Estate , LLC, of even date herewith, and by a Mortgage on real property located in Martin County, Florida, of even date herewith recorded or to be recorded in the public records of Martin County, Florida, made by Acorn at Willoughby, LLC, a Florida limited liability company in favor of BANK, and shall be construed and enforced in accordance with the laws of the State of Florida, said Mortgages being cross defaulted and cross collateralized with each other.

Whether or not specific property is described above, as additional security for the payment of this Note, any renewals, extensions or modifications thereof, and any other liabilities of MAKER to the BANK, however or whenever created, MAKER hereby pledges to BANK any and all property of MAKER now or hereafter delivered to or left in or coming into possession, control or custody of BANK, whether expressly as Collateral security or for any purpose (including cash, stock, dividends, and all rights to subscribed-for securities incident to, declared, or granted in connection with such property), and property described in collateral receipts or other documents signed or furnished by the MAKER, and any and all replacements of any of the foregoing, whether or not in the possession of BANK. All such property and any other property securing MAKER'S liabilities to the BANK will hereafter be referred to as "the Collateral". The Collateral is also pledged as security for all other liabilities (primary, secondary, direct, contingent, sole, joint or several), due or to become due or which may be hereafter contracted or acquired, of each MAKER to BANK, whether such liabilities arise in the ordinary course of business or not. Right is hereby expressly granted to the BANK at its option after a default by MAKER or an OBLIGOR with failure to cure within any applicable grace period to transfer at any time to itself or to its nominee any Collateral, and to receive the income thereon and hold the same as security herefor, or apply it on the principal or interest due hereon or due on any liability secured hereby.

4.    <u>RESERVES.</u>  BANK has allocated under the Loan evidenced by this Note $1,000,000.000 as an interest reserve. MAKER hereby authorizes BANK to disburse said interest reserve of the Loan to pay interest due on this Note, notwithstanding that MAKER may not have requested a disbursement of such amount. Such disbursement, if made, shall be added to the outstanding principal balance of this Note. The authorization hereby granted, however, shall not obligate BANK to make such disbursement in the event

MAKER is in default under the Loan or would be in default but for the passage of time, nor prevent MAKER from paying such interest from its own funds. If the interest reserve, which is originally in the amount of $1,000,000.00, for the Loan shall be depleted or BANK otherwise determines that it will not fund the interest on the Note in accordance with the preceding sentence, all interest which accrues under and pursuant to this Note shall be paid by MAKER from the resources of MAKER.

BANK has allocated under the Loan evidenced by this Note $500,000,000 as future soft cost reserve for entitlements. MAKER hereby authorizes BANK to disburse said soft cost reserve of the Loan to pay soft costs incurred by MAKER in obtaining entitlements for the property securing this Note, upon request from MAKER for the disbursement of such amount. Such disbursement, if made, shall be added to the outstanding principal balance of this Note. The authorization hereby granted, however, shall not obligate BANK to make such disbursement in the event MAKER is in default under the Loan or would be in default but for the passage of time, nor prevent MAKER from paying such soft costs from its own funds. If the soft cost reserve, which is originally in the amount of $500,000.00, for the Loan shall be depleted or BANK otherwise determines that it will not fund the soft costs in accordance with the preceding sentence, all such soft costs shall be paid by MAKER from the resources of MAKER.

5.    ADDITIONAL COVENANTS. It is jointly and severally covenanted and agreed with the BANK by each MAKER, endorser, surety, guarantor, and other party to this note (all of whom are hereinafter for brevity called OBLIGOR or OBLIGORS) that:

a.    Additions to, releases, reductions or exchanges of, or substitutions for the Collateral, payments on account of this loan or increases of the same, or other loans made partially or wholly upon the Collateral, may from time to time be made without affecting the provisions of this note or the liabilities of any party hereto. BANK shall exercise reasonable care in the custody and preservation of the Collateral and shall be deemed to have exercised reasonable care if it takes such action for that purpose as OBLIGOR shall reasonably request in writing, but no omission to comply with any request of OBLIGOR shall of itself be deemed a failure to exercise reasonable care. Without limiting the generality of the foregoing, the BANK shall have no responsibility for ascertaining any maturities, calls, conversions, exchanges, offers, tenders or similar matters relating to any of the Collateral, nor for informing the undersigned with respect to any thereof. BANK shall not be bound to take any steps necessary to preserve any rights in the pledged property against prior parties, and OBLIGOR shall take all necessary steps for such purposes. BANK or its nominee need not collect interest on or principal of any pledged property or give any notice with respect to it. If the BANK shall at any time deem itself insecure, OBLIGOR shall within one (1) day after demand pledge and deposit with BANK as part of the Collateral additional property which is satisfactory to BANK.

b.    The following events shall constitute a default hereunder: (1) failure of any OBLIGOR to perform any agreement hereunder or to pay in full, when due, any liability whatsoever to BANK or any installment thereof or interest thereon; (2) the death of any OBLIGOR, except that MAKER shall have 30 days from the date of such death to provide BANK with a substitute OBLIGOR (unless BANK in writing waives such requirement) and financial information and other BANK requested information on such substitute OBLIGOR, which is satisfactory to BANK in form and substance; (3) the filing of any petition under the Bankruptcy Act, or any similar federal or state statute, by or against any OBLIGOR; (4) an application for the appointment of a receiver for, the making of a general assignment for the benefit of creditors by, or the insolvency of any OBLIGOR; (5) the entry of a judgment in excess of $100,000.00, against any OBLIGOR which is not properly bonded in the proper court within 30 days of such entry; (6) the issuing of any attachments or garnishment, or the filing of any lien in excess of $100,000.00 against any property of any OBLIGOR which is not properly bonded in the proper court within 30 days of such entry; (7) the taking of possession of any substantial part of the property of any OBLIGOR at the instance of any governmental authority; (8) the dissolution, merger, consolidation, or reorganization of any OBLIGOR; (9) the determination by BANK that a material adverse change has occurred in the financial condition of any OBLIGOR from the conditions set forth in the most recent financial statement of such OBLIGOR heretofore furnished to BANK, or from the condition of such OBLIGOR as heretofore most recently disclosed to BANK in any manner; or that any warranty, representation, certificate or statement of any OBLIGOR (whether contained in this note or not) pertaining to or in connection with this note or the loan evidenced by this note is not true; (10) assignment by any OBLIGOR of any equity in any of the pledged Collateral, or other property of any OBLIGOR in which the BANK has a security interest without the written consent of BANK; (11) failure to do all things necessary to preserve and maintain the value

of the Collateral and the BANK'S security interest in same, or other property of any OBLIGOR in which the BANK has a security interest, including, but not limited to, the payment of taxes and premiums on policies of insurance on the due date (or if any mortgage requires earlier payment upon such earlier payment date). In connection with the defaults set forth in this Paragraph b. the OBLIGOR shall have 30 days after demand to cure any monetary default (other than failure to pay a payment due under this Note inasmuch as such payments do not require any notice be given), and shall have (30) days after demand (or such additional period as BANK may specify in the event that such default, if curable, requires work to be performed, acts to be done for conditions to be remedied which by their nature cannot be performed, done or remedied, as the case may be, within such 30-day period and OBLIGOR shall diligently and continuously process the same to completion, or such lesser period as BANK may specify in the event that BANK's security reasonably will be materially impaired if OBLIGOR does not perform in less than thirty (30) days).

c.    BANK shall have, but shall not be limited to, the following rights, each of which may be exercised at any time whether or not this note is due: (1) to pledge or transfer this note and the Collateral, whereupon BANK shall be relieved of all duties and responsibilities hereunder and relieved from any and all liability with respect to any Collateral so pledged or transferred, and any pledgee or transferee shall for all purposes stand in the place of BANK hereunder and have all the rights of BANK hereunder; (2) to transfer the whole or any part of the pledged Collateral into the name of itself or its nominee; (3) to notify any OBLIGORS on any Collateral to make payment to BANK of any amounts due or to become due thereon; (4) after the default of any OBLIGOR, to demand, sue for, collect, or make any compromise or settlement it deems desirable with reference to the Collateral, or other property of any OBLIGOR in which the BANK has a security interest; and (5) after the default of any OBLIGOR, to take possession or control of any proceeds of the Collateral, or other property of any OBLIGOR in which the BANK has a security interest.

d.    BANK is hereby given a lien upon and a security interest in all property of each OBLIGOR now or at any time hereafter in the possession of BANK in any capacity whatsoever, including but not limited to any balance or share of any deposit, trust or agency account, as security for the payment of this note, and a similar lien upon the security interest in all such property of each OBLIGOR as security for the payment of all other liabilities of each OBLIGOR to BANK and BANK shall have the same rights as to such property as it has with respect to the Collateral pledged by the OBLIGOR.

e.    If BANK deems itself insecure or upon the occurrence of any default hereunder, BANK shall have all the remedies of a secured party under the Uniform Commercial Code for the State of Florida and, without limiting the generality of the foregoing, BANK shall have the right, at its option, and without notice or demand, to declare the entire amount of this note remaining unpaid, and all other liabilities of any OBLIGOR or any such liabilities selected by BANK, immediately due and payable, less any unearned interest or other charges and any rebates required by law (it being the intention hereof that under no circumstances shall BANK or any holder hereof be entitled to receive at any time any charges not allowed or permitted by law or any interest in excess of the maximum allowed by law); to set off against this note all money owed by BANK in any capacity to each or any OBLIGOR, whether or not due, and also to set off against all other liabilities of each OBLIGOR to BANK all money owed by BANK in any capacity to each or any OBLIGOR; and BANK shall be deemed to have exercised such right of set off and to have made a charge against any such money immediately upon the occurrence of such default even though such charge is made or entered on the books of BANK subsequent thereto. Unless the Collateral is perishable or threatens to decline speedily in value or if of a type customarily sold on a recognized market, BANK will give OBLIGOR reasonable notice of the time and place of any public sale thereof or of the time after which a private sale will be held. The requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to any OBLIGOR at the address given below or at any other address shown on the records of the BANK, at least ten (10) days before the time of the sale. Upon disposition of any Collateral after the occurrence of any default hereunder, OBLIGORS shall be and remain liable for any deficiency, and BANK shall account to OBLIGOR for any surplus, but BANK shall have the right to apply all or any part of such surplus (or to hold the same as a reserve) against any and all other liabilities of each or any OBLIGOR to BANK.

f.    No delay or omission on the part of BANK in exercising any right hereunder shall operate as a waiver of such right or of any right under this note. No waiver shall be binding on BANK unless in writing signed by the BANK, and then only to the extent specifically set forth therein. Presentment, demand, protest

and notice of dishonor, are hereby waived by each and every OBLIGOR. The OBLIGORS, jointly and severally, promise and agree to pay in the event of a default, all costs and expenses incurred in the collection of this note, including reasonable attorney's fees and also those costs, expenses and reasonable attorney's fees incurred in appellate proceedings. All nouns and pronouns contained in this instrument shall mean and include the plural as well as the singular, and the masculine, feminine and neuter gender whenever and wherever the context so admits or requires.

g.    Each OBLIGOR hereby expressly consents to any and all extensions and renewals, in whole or in part, and all delays in time of payment or other performance which the holder hereof may grant or permit at any time and from time to time without limitation, and without any notice to or further consent of any OBLIGOR. No action or inaction by BANK shall discharge any party liable for the payment hereof, and the liability of all such parties shall continue until full payment is received by the BANK. Without limiting the generality of the foregoing, the release or discharge of any OBLIGOR shall not discharge any other OBLIGOR, and the release or impairment of Collateral, the taking of a renewal note, for part or all of indebtedness hereunder, or a change in the interest rate, shall not discharge any OBLIGOR.

h.    Within ninety (90) days following the end of each of MAKER's fiscal year, MAKER will deliver to BANK financial statements reflecting the complete results of the operations of the Collateral for the previous fiscal year, certified to BANK to be correct by the chief financial officer of MAKER, such statements to include a profit and loss statement and reconciliation of surplus statement of the MAKER for such year, and a balance sheet as of the end of such year, and such statements to be prepared by an independent certified public accountant of recognized standing selected by the MAKER and satisfactory to the BANK. Notwithstanding the preceding sentence, in the event MAKER does not in its normal operations prepare such statements separate from its entity owner, then MAKER shall provide such statements for the entity owner which must show the operations of the MAKER thereon. Within thirty (30) days of the anniversary date of the latest each OBLIGOR will deliver to BANK signed personal financial statements on such OBLIGOR, on forms acceptable to BANK. Notwithstanding the preceding sentence, in the event any such OBLIGOR does not in its normal operations prepare such returns separate from its entity owner, then MAKER shall cause such OBLIGOR to provide such statements for the entity owner which must show the financial information of the OBLIGOR thereon. Each OBLIGOR shall furnish to the BANK complete copies of each of their annual tax returns within ninety (90) days of the close of the OBLIGOR's fiscal year. Notwithstanding the preceding sentence, in the event any OBLIGOR does not in its normal operations prepare such returns separate from their entity owner, then OBLIGOR shall provide such statements for the entity owner which must show the financial information of the OBLIGOR thereon. MAKER, upon demand or as otherwise stated in any of the other loan documents, also will furnish BANK with such documentation as BANK reasonably may require to substantiate the foregoing statements and the foregoing statements must be in such form and contain such information as BANK reasonably may require. MAKER, from time to time, upon request by BANK or as otherwise stated in any of the other Loan Documents, will deliver to BANK complete personal financial statements for each OBLIGOR. BANK shall treat all financial information referred to herein as confidential.

i.    The BANK is authorized by all OBLIGORS without notice to any of them to date this note as of the day when the first disbursement of the loan evidenced hereby is made, and to fill in any blank spaces herein to conform to the terms upon which the loan evidenced hereby is made.

j.    Both principal and interest on this promissory note are payable in lawful money of the United States of America without deduction for or on account of any present or future taxes, duties or other charges levied or imposed on this note or the proceeds, maker or holder hereof by any government, or any instrumentality, authority or political subdivision thereof. Each OBLIGOR agrees upon the request of BANK to pay all such taxes, duties and other charges in addition to principal and interest on this promissory note, exclusive of United States income taxes and Florida income taxes.

Rev. 11/1998

k.    The BANK'S rights hereunder and under any other security agreement or other writing or under applicable law shall be cumulative.  BANK at its option may make subsequent advances evidenced by this Note, in which event this Note shall remain valid and enforceable notwithstanding partial or total payment, reborrowing, or repayment of sums advanced hereunder.

MAKER:
Acorn Real Estate, LLC, a Florida limited liability company

By: Acorn Real Estate Development
Corporation, a Florida Corporation,
its Manager

BY: _____                Mailing Address: 1570 S.E. 14th Court
Stephen F. Villello, President                Deerfield Beach, FL 33441


Acorn at Willoughby, LLC, a Florida limited liability company

By: Acorn Real Estate Development
Corporation, a Florida Corporation,
its Manager

BY: _____                Mailing Address: 1570 S.E. 14th Court
Stephen F. Villello, President                Deerfield Beach, FL 33441


THE PROPER FLORIDA DOCUMENTARY STAMP TAX HAS BEEN PAID AND THE PROPER DOCUMENTARY STAMPS HAVE BEEN AFFIXED TO THE MORTGAGE AND/OR THE FUTURE ADVANCE NOTICE, MORTGAGE AND OTHER SECURITY DOCUMENTS MODIFICATION AGREEMENT SECURING THIS PROMISSORY NOTE RECORDED IN ST. LUCIE COUNTY, FLORIDA, AND/OR THE MORTGAGE RECORDED IN MARTIN COUNTY OF EVEN DATE HEREWITH.

THE ORIGINAL NOTES, AS MODIFIED AND ASSUMED, AND ASSIGNED AND FUTURE ADVANCE NOTE OF EVEN DATE HEREWITH ARE ATTACHED HERETO.


Accepted for the Bank

BY: _____
Jennifer Brancaccio, Vice President

Rev. 11/1998



EXHIBIT "A"

<u>Description of Real Property Collateral:</u>

See Composite Exhibit "A" attached hereto and incorporated herein by reference.

<u>Description of Personal Property Collateral:</u>

So much of the following property as is owned by either of the MAKER: All goods, equipment, furnishings, fixtures, chattels and personal property of whatever nature owned by either of the MAKER, now or hereafter attached or affixed to or used in and about the building or buildings now erected or hereafter to be erected on the tract of land described hereinabove, and all fixtures, accessions and appurtenances thereto, and all renewals or replacements of or substitutions for any of the foregoing; all buildings, building materials and equipment now or hereafter delivered to the said Property and intended to be installed therein and all security deposits and future rentals under lease agreements now or at any time hereafter executed covering or affecting any of the Property and held by or for the benefit of the either of the MAKER; all monetary deposits which either of the MAKER has been required to give to any public or private utility with respect to utility services furnished to the Property; all funds, accounts, inventory, instruments, documents, general intangibles (including trademarks, trade names and symbols used in connection therewith), and notes or chattel paper owned by either of the MAKER, whether or not related to or connected with the Property; all contracts, permits, licenses, warranties, plans, drawings, leases, deposits, collateral assignments thereof, and other rights and privileges obtained in connection with the Property (all of the said property previously described in this paragraph will hereinafter be collectively referred to as the "Collateral"); and all proceeds of the Collateral (The term "Property" shall include the Collateral).

G:\DOCS\ALYS\First National bank loans\80  Acorn esh fixed pr FA cross col 2 owner\Note consolidated 3.wpd

Rev. 11/1998

Exhibit "A"

The North 600 feet of the South 800 feet of Government Lot 3, in Section 14, Township 34 South, Range 40 East, St. Lucie County, Florida, LESS AND EXCEPTING THEREFROM, the Right-of-Way for State Road A-1-A.

AND

The South 200 feet of Government Lot 3, lying East of State Road A-1-A, Section 14, Township 34 South, Range 40 East, St. Lucie County, Florida.



Exhibit "A"

Tracts 1, 2, 3, and 6, Block 66, of ST. LUCIE INLET FARMS SUBDIVISION, according to the Plat thereof, recorded in Plat Book 1, Page 98, of the Public Records of Martin County, Florida (formerly Palm Beach County, Florida).

LESS and EXCEPT the lands described in Official Records Book 947, Page 392; Official Records Book 1492, Page 2140 and Official Records Book 1492, Page 2143.

Page 2 of 2



# EXHIBIT "B"

## AMENDED AND RESTATED
## CONTINUING GUARANTY

FOR VALUABLE CONSIDERATION, the undersigned (the "Guarantor") for itself, its successors and assigns, unconditionally guarantees to SEACOAST NATIONAL BANK (the "Lender"), and its successors, participants, endorsees and/or assigns, the due performance and full and prompt payment, whether at maturity, by acceleration, or otherwise, of any and all obligations and indebtedness of ACORN REAL ESTATE, LLC, a Florida limited liability company, and ACORN AT WILLOUGHBY, LLC, a Florida limited liability company (collectively, the "Borrower"), to Lender, including, but not limited to: (A) a loan from Lender to Borrower in the aggregate sum of $17,310,000.00 (the "Loan"), evidenced by: (i) that certain amended and restated promissory note in the amount of $15,500,000.00 from Borrower in favor of Lender dated even date herewith; and (ii) that certain future advance promissory note in the amount of $1,810,000.00 from Borrower in favor of Lender dated even date herewith; and (B) that certain letter of credit facility in the aggregate amount of $1,528,849.18 evidenced by a letter of credit reimbursement agreement from Borrower in favor of Lender dated even date herewith (collectively, the "Note").

The word "indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Borrower, heretofore, now, or hereafter made, incurred, or created, whether voluntary or involuntary, and however arising, whether due or not, absolute or contingent, liquidated or nonliquidated, and whether Borrower may be liable individually, or jointly with others, or whether recovery upon such indebtedness may be or hereafter becomes barred by any statute of limitations, or whether such indebtedness may be or hereafter becomes otherwise unenforceable. This is a Continuing Guaranty relating to said indebtedness, including that indebtedness arising under subsequent or successive transactions between Borrower and Lender and is not limited as to amount.

The obligations hereunder are joint and several and independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against Guarantor, whether or not action is brought against Borrower, Borrower may be joined in any such action or actions. If separate guaranties of the Borrower's indebtedness to Lender are executed by other guarantors, the obligations of Guarantor hereunder shall be joint and several with those of the other guarantors and may be enforced regardless of the enforcement of other guaranties. This is a guaranty of payment and not of collection.

Guarantor acknowledges and agrees with Lender that the indebtedness is a valid and binding obligation of Borrower. Guarantor authorizes Lender, without notice or demand, and without affecting its liability hereunder, from time to time, and on any number of occasions, to (a) renew, amend, compromise, extend, accelerate, reinstate, or otherwise change the time for payment of, or otherwise change the terms of, the indebtedness or any part thereof, including increasing or decreasing the interest rate thereon; (b) take and hold security for the payment of this Continuing Guaranty or the indebtedness, and exchange, enforce, waive and release any such security; (c) apply such security and direct the order or manner of sale thereof as Lender in its discretion may elect from time to time; and (d) release or substitute any one or more of the endorsers or guarantors. Guarantor

FTL:2750532:3
July 14, 2008

1

EXHIBIT "R"

RECEIPT OF THE ORIGINAL
HEREBY ACKNOWLEDGED

BY _____

DATE 7/16/08

acknowledges and agrees that no act or omission of any kind by Lender, including, but not limited to, the failure to take or perfect a security interest in any security for the indebtedness shall affect or impair this Continuing Guaranty, and the Lender shall have no duties with respect thereof to Guarantor. Lender may without notice assign this Continuing Guaranty in whole or in part at any time.

Guarantor waives any right to require Lender to (a) proceed against Borrower; (b) proceed against or exhaust any security held from Borrower; or (c) pursue any other remedy whatsoever available to Lender. Guarantor waives any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of Borrower's liability or by reason of Lender releasing any security held from Borrower. Until all of Borrower's indebtedness to Lender shall have been paid in full, Guarantor shall have no right of subrogation, and Guarantor waives any right to enforce any remedy that Lender now has or may hereafter have against Borrower, and shall waive any benefit of, and any right to participate in, any security now or hereafter held by Lender. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of dishonor, and notices of acceptance of this Continuing Guaranty and of the existence, creation, or incurrence of new or additional indebtedness and all other defenses to any action or proceeding to enforce this Continuing Guaranty, except the single defense that the sum claimed has actually been paid to Lender. Guarantor covenants to cause Borrower to maintain and preserve the enforceability of any instruments now or hereafter executed in favor of Lender and to take no action of any kind that might be the basis for a claim that Guarantor has any defense hereunder other than payment in full of all Borrower's indebtedness to Lender. Guarantor hereby indemnifies Lender against any loss, cost, or expense by reason of the assertion by Guarantor of any defense hereunder based upon any such action or inaction of Borrower. Guarantor waives any right or claim of right to cause a marshalling of the Borrower's assets. No delay on the part of Lender in the exercise of any right, power or privilege under the terms of any documentation between Lender and Borrower or under this Continuing Guaranty shall operate as a waiver of any such privilege, power or right.

In addition to all liens upon, and rights to setoff against, the monies, securities or other property of Guarantor given to Lender by law, Guarantor agrees that Lender shall have a lien upon, and a right to setoff against, all monies, securities, and other property of Guarantor now or hereafter in possession of or on deposit with Lender, whether held in a general or special account of deposit, or for safekeeping or otherwise; and, every such lien and right to setoff may be exercised without demand upon or notice to Guarantor. No lien or right to setoff shall be deemed to have been waived by any act or conduct on the part of Lender, or by any neglect to exercise such right to setoff or to enforce such lien, or by any delay in so doing; and every right to setoff and lien shall continue in full force and effect until such right to setoff or lien is specifically waived or released by an instrument in writing executed by Lender.

Guarantor acknowledges and agrees with Lender that, until all of the Borrower's indebtedness to Lender have been paid in full, any and all indebtedness of Borrower now or hereafter held by Guarantor, is hereby subordinated to the indebtedness of Borrower to Lender; and such indebtedness of Borrower to Guarantor, if Lender so requests, shall be collected, enforced and received by Guarantor as trustees for Lender and be paid over to Lender on account of the indebtedness of

Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Continuing Guaranty.

Guarantor agrees to pay all attorneys' fees and all other costs and expenses that may be incurred or expended by Lender in the enforcement of Borrower's obligations and of this Continuing Guaranty, whether suit be brought or not, and if suit be brought, then for all services in trial and appellate courts.

Upon default of Borrower in any of its obligations or liabilities to Lender, or if Borrower or Guarantor shall become insolvent or make an assignment for the benefit of creditors and same is not discharged within ninety (90) days, or if a petition in bankruptcy or for corporate reorganization or for an arrangement be filed by or against Borrower or Guarantor, or if there is the appointment of a receiver for Borrower or for Guarantor or its property and same is not discharged within ninety (90) days, or if a judgment is obtained or warrant of attachment issued against Borrower or Guarantor and same is not discharged within ninety (90) days, all of the indebtedness, shall, without notice or demand, at the option of Lender, become immediately due and payable and shall be paid forthwith by Guarantor.

If the Borrower is a corporation or a partnership, it shall not be necessary for the Lender to inquire into the existence or powers of the Borrower, or the officers, directors, partners, or agents acting or purporting to act on the Borrower's behalf, and any indebtedness made or created upon the professed exercise of such existence or powers shall be guaranteed hereunder.

Guarantor hereby submits to the jurisdiction of the state and federal courts in the State of Florida for purposes of any action arising from or growing out of this Continuing Guaranty, and further agrees that the venue of any action may be laid in Palm Beach County or, if applicable, any other County in the State of Florida in which real property which secures any of the indebtedness is located. Nothing contained in this Continuing Guaranty, however, shall be deemed to constitute, or to imply the existence of, any agreement by Lender to bring any action only in said courts or to restrict in any way any of Lender's remedies or rights to enforce the terms of this Continuing Guaranty as, when and where Lender shall deem appropriate, in its sole discretion.

Notwithstanding any provision herein or in any instrument now or hereafter evidencing said indebtedness, the total liability for payments in the nature of interest under this Continuing Guaranty shall not exceed the limits imposed from time to time by applicable usury laws. This Continuing Guaranty shall be accepted at the offices of Lender in Palm Beach County, Florida, and for all purposes, be governed by and construed with the laws of the State of Florida.

Guarantor acknowledges that Lender has been induced by this Continuing Guaranty to extend the credit to Borrower creating the indebtedness, and that Lender would not have extended said credit without this Continuing Guaranty, and this Continuing Guaranty shall, without further reference or assignment, pass to, and may be relied upon and enforced by, any successor or participant or assignee of Lender.

Until the indebtedness is paid in full, no amounts paid under this Continuing Guaranty shall in any way or at any time entitle Guarantor to any right, claim or cause of action against the Borrower, or to any right, title or interest in or to any of the indebtedness or any rights of the Lender, or in or to any instruments or documents evidencing or securing or concerning the indebtedness, and Guarantor hereby waives, for the benefit of the Lender and the Borrower, any and all such rights (whether arising by way of subrogation, exoneration, reimbursement, participation, assignment, judicial decision, statute, constitutional provision, or otherwise) which Guarantor might otherwise have had in the absence of this waiver and which would have otherwise entitled Guarantor to be a "creditor" of the Borrower under the provisions of the U.S. Bankruptcy Code (Title 11, U.S. Code) or any other bankruptcy or insolvency law.

Guarantor acknowledges and agrees that this Continuing Guaranty shall remain in full force and effect for one year after the date all indebtedness of Borrower to Lender is paid in full and that if Lender is required by a court of competent jurisdiction to refund or repay to the Borrower or on behalf of the Borrower any amounts received in reduction or satisfaction of the indebtedness, then and in that event the liabilities of the Guarantor in regard to said amounts shall be reinstated and this Continuing Guaranty shall remain in full force and effect in respect thereto. Furthermore, Guarantor agrees that this Continuing Guaranty shall continue to be effective or shall be reinstated, as the case may be, at any time payment, or any part thereof, of principal or interest charges, or other related expenses of the obligations are rescinded or otherwise forgiven by Lender upon the bankruptcy or reorganization of Borrower or Guarantor.

Guarantor agrees to furnish to Lender within sixty (60) days after the end of the calendar year a complete financial statement of Guarantor certified by the Guarantor as being true and correct (in form and substance satisfactory to Lender), including a statement of income and expenses, liquidity, and a balance sheet indicating net worth.

Each provision hereof is intended to be severable and the invalidity or illegality of any portion of this Continuing Guaranty shall not affect the validity or legality of the remainder hereof.

(SIGNATURE PAGE FOLLOWS)

LENDER BY ITS ACCEPTANCE HEREOF AND GUARANTOR HEREBY VOLUNTARILY, KNOWINGLY AND INTENTIONALLY WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING ARISING UNDER THIS GUARANTY OR CONCERNING THE INDEBTEDNESS AND/OR COLLATERAL THEREFOR OR PERTAINING TO ANY TRANSACTION RELATED TO OR CONTEMPLATED THEREBY, REGARDLESS OF WHETHER SUCH ACTION OR PROCEEDING CONCERNS ANY CONTRACTUAL OR TORTIOUS OR OTHER CLAIM. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT TO THE LENDER IN EXTENDING CREDIT TO THE BORROWER, THAT THE LENDER WOULD NOT HAVE EXTENDED SUCH CREDIT WITHOUT THIS JURY TRIAL WAIVER, AND THAT GUARANTOR HAS BEEN REPRESENTED BY AN ATTORNEY OR HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY IN CONNECTION WITH THIS JURY TRIAL WAIVER AND UNDERSTAND THE LEGAL EFFECT OF THIS WAIVER.

This Amended and Restated Guaranty amends and restates the Continuing Guaranty executed by Guarantor in favor of Lender dated June 23, 2006.

IN WITNESS WHEREOF, Guarantor has executed this Amended and Restated Continuing Guaranty effective as of _June 23_, 2008.

Signed, sealed and delivered
in the presence of:

Print Name: _Katie Conlay_

Print Name: _Isabelle Trebert_

_Franco Vitiello_
FRANCO VITIELLO

Social Security No.: _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_

COMMONWEALTH OF MASSACHUSETTS          )
                                       ) SS:
COUNTY OF __Norfolk__                  )

    I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by FRANCO VITIELLO who is personally known to me or who has produced __MaDl__ as identification.

    WITNESS my hand and official seal in the County and State last aforesaid this __1__ day of __July__, 2008.

_____
Notary Public

_____
Typed, printed or stamped name of Notary Public

My Commission Expires:

KATIE E. BOULAY
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires January 31, 2014

# EXHIBIT "C"

*C*

## AMENDED AND RESTATED
## CONTINUING GUARANTY

FOR VALUABLE CONSIDERATION, the undersigned (the "Guarantor") for itself, its successors and assigns, unconditionally guarantees to SEACOAST NATIONAL BANK (the "Lender"), and its successors, participants, endorsees and/or assigns, the due performance and full and prompt payment, whether at maturity, by acceleration, or otherwise, of any and all obligations and indebtedness of ACORN REAL ESTATE, LLC, a Florida limited liability company, and ACORN AT WILLOUGHBY, LLC, a Florida limited liability company (collectively, the "Borrower"), to Lender, including, but not limited to:  (A) a loan from Lender to Borrower in the aggregate sum of $17,310,000 (the "Loan"), evidenced by:  (i) that certain amended and restated promissory note in the amount of $15,500,000.00 from Borrower in favor of Lender dated even date herewith; and (ii) that certain future advance promissory note in the amount of $1,810,000.00 from Borrower in favor of Lender dated even date herewith; and (B) that certain letter of credit facility in the aggregate amount of $1,528,849.18 evidenced by a letter of credit reimbursement agreement from Borrower in favor of Lender dated even date herewith (collectively, the "Note").

The word "indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Borrower, heretofore, now, or hereafter made, incurred, or created, whether voluntary or involuntary, and however arising, whether due or not, absolute or contingent, liquidated or nonliquidated, and whether Borrower may be liable individually, or jointly with others, or whether recovery upon such indebtedness may be or hereafter becomes barred by any statute of limitations, or whether such indebtedness may be or hereafter becomes otherwise unenforceable. This is a Continuing Guaranty relating to said indebtedness, including that indebtedness arising under subsequent or successive transactions between Borrower and Lender and is not limited as to amount.

The obligations hereunder are joint and several and independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against Guarantor, whether or not action is brought against Borrower, Borrower may be joined in any such action or actions. If separate guaranties of the Borrower's indebtedness to Lender are executed by other guarantors, the obligations of Guarantor hereunder shall be joint and several with those of the other guarantors and may be enforced regardless of the enforcement of other guaranties. This is a guaranty of payment and not of collection.

Guarantor acknowledges and agrees with Lender that the indebtedness is a valid and binding obligation of Borrower.  Guarantor authorizes Lender, without notice or demand, and without affecting its liability hereunder, from time to time, and on any number of occasions, to (a) renew, amend, compromise, extend, accelerate, reinstate, or otherwise change the time for payment of, or otherwise change the terms of, the indebtedness or any part thereof, including increasing or decreasing the interest rate thereon; (b) take and hold security for the payment of this Continuing Guaranty or the indebtedness, and exchange, enforce, waive and release any such security; (c) apply such security and direct the order or manner of sale thereof as Lender in its discretion may elect from time to time; and (d) release or substitute any one or more of the endorsers or guarantors. Guarantor

FTL:2750529:3
July 14, 2008

1

EXHIBIT ___ "*P*"

RECEIPT OF THE ORIGINAL
HEREBY ACKNOWLEDGED
BY _____
DATE  7/16/08

acknowledges and agrees that no act or omission of any kind by Lender, including, but not limited to, the failure to take or perfect a security interest in any security for the indebtedness shall affect or impair this Continuing Guaranty, and the Lender shall have no duties with respect thereof to Guarantor. Lender may without notice assign this Continuing Guaranty in whole or in part at any time.

Guarantor waives any right to require Lender to (a) proceed against Borrower; (b) proceed against or exhaust any security held from Borrower; or (c) pursue any other remedy whatsoever available to Lender. Guarantor waives any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of Borrower's liability or by reason of Lender releasing any security held from Borrower. Until all of Borrower's indebtedness to Lender shall have been paid in full, Guarantor shall have no right of subrogation, and Guarantor waives any right to enforce any remedy that Lender now has or may hereafter have against Borrower, and shall waive any benefit of, and any right to participate in, any security now or hereafter held by Lender. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of dishonor, and notices of acceptance of this Continuing Guaranty and of the existence, creation, or incurrence of new or additional indebtedness and all other defenses to any action or proceeding to enforce this Continuing Guaranty, except the single defense that the sum claimed has actually been paid to Lender. Guarantor covenants to cause Borrower to maintain and preserve the enforceability of any instruments now or hereafter executed in favor of Lender and to take no action of any kind that might be the basis for a claim that Guarantor has any defense hereunder other than payment in full of all Borrower's indebtedness to Lender. Guarantor hereby indemnifies Lender against any loss, cost, or expense by reason of the assertion by Guarantor of any defense hereunder based upon any such action or inaction of Borrower. Guarantor waives any right or claim of right to cause a marshalling of the Borrower's assets. No delay on the part of Lender in the exercise of any right, power or privilege under the terms of any documentation between Lender and Borrower or under this Continuing Guaranty shall operate as a waiver of any such privilege, power or right.

In addition to all liens upon, and rights to setoff against, the monies, securities or other property of Guarantor given to Lender by law, Guarantor agrees that Lender shall have a lien upon, and a right to setoff against, all monies, securities, and other property of Guarantor now or hereafter in possession of or on deposit with Lender, whether held in a general or special account of deposit, or for safekeeping or otherwise; and, every such lien and right to setoff may be exercised without demand upon or notice to Guarantor. No lien or right to setoff shall be deemed to have been waived by any act or conduct on the part of Lender, or by any neglect to exercise such right to setoff or to enforce such lien, or by any delay in so doing; and every right to setoff and lien shall continue in full force and effect until such right to setoff or lien is specifically waived or released by an instrument in writing executed by Lender.

Guarantor acknowledges and agrees with Lender that, until all of the Borrower's indebtedness to Lender have been paid in full, any and all indebtedness of Borrower now or hereafter held by Guarantor, is hereby subordinated to the indebtedness of Borrower to Lender; and such indebtedness of Borrower to Guarantor, if Lender so requests, shall be collected, enforced and received by Guarantor as trustees for Lender and be paid over to Lender on account of the indebtedness of

FTL:2750529:3
July 14, 2008

2

Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Continuing Guaranty.

Guarantor agrees to pay all attorneys' fees and all other costs and expenses that may be incurred or expended by Lender in the enforcement of Borrower's obligations and of this Continuing Guaranty, whether suit be brought or not, and if suit is brought, then for all services in trial and appellate courts.

Upon default of Borrower in any of its obligations or liabilities to Lender, or if Borrower or Guarantor shall become insolvent or make an assignment for the benefit of creditors and same is not discharged within ninety (90) days, or if a petition in bankruptcy or for corporate reorganization or for an arrangement be filed by or against Borrower or Guarantor, or if there is the appointment of a receiver for Borrower or for Guarantor or its property and same is not discharged within ninety (90) days, or if a judgment is obtained or warrant of attachment issued against Borrower or Guarantor and same is not discharged within ninety (90) days, all of the indebtedness, shall, without notice or demand, at the option of Lender, become immediately due and payable and shall be paid forthwith by Guarantor.

If the Borrower is a corporation or a partnership, it shall not be necessary for the Lender to inquire into the existence or powers of the Borrower, or the officers, directors, partners, or agents acting or purporting to act on the Borrower's behalf, and any indebtedness made or created upon the professed exercise of such existence or powers shall be guaranteed hereunder.

Guarantor hereby submits to the jurisdiction of the state and federal courts in the State of Florida for purposes of any action arising from or growing out of this Continuing Guaranty, and further agrees that the venue of any action may be laid in Palm Beach County or, if applicable, any other County in the State of Florida in which real property which secures any of the indebtedness is located. Nothing contained in this Continuing Guaranty, however, shall be deemed to constitute, or to imply the existence of, any agreement by Lender to bring any action only in said courts or to restrict in any way any of Lender's remedies or rights to enforce the terms of this Continuing Guaranty as, when and where Lender shall deem appropriate, in its sole discretion.

Notwithstanding any provision herein or in any instrument now or hereafter evidencing said indebtedness, the total liability for payments in the nature of interest under this Continuing Guaranty shall not exceed the limits imposed from time to time by applicable usury laws. This Continuing Guaranty shall be accepted at the offices of Lender in Palm Beach County, Florida, and for all purposes, be governed by and construed with the laws of the State of Florida.

Guarantor acknowledges that Lender has been induced by this Continuing Guaranty to extend the credit to Borrower creating the indebtedness, and that Lender would not have extended said credit without this Continuing Guaranty, and this Continuing Guaranty shall, without further reference or assignment, pass to, and may be relied upon and enforced by, any successor or participant or assignee of Lender.

Until the indebtedness is paid in full, no amounts paid under this Continuing Guaranty shall in any way or at any time entitle Guarantor to any right, claim or cause of action against the Borrower, or to any right, title or interest in or to any of the indebtedness or any rights of the Lender, or in or to any instruments or documents evidencing or securing or concerning the indebtedness, and Guarantor hereby waives, for the benefit of the Lender and the Borrower, any and all such rights (whether arising by way of subrogation, exoneration, reimbursement, participation, assignment, judicial decision, statute, constitutional provision, or otherwise) which Guarantor might otherwise have had in the absence of this waiver and which would have otherwise entitled Guarantor to be a "creditor" of the Borrower under the provisions of the U.S. Bankruptcy Code (Title 11, U.S. Code) or any other bankruptcy or insolvency law.

Guarantor acknowledges and agrees that this Continuing Guaranty shall remain in full force and effect for one year after the date all indebtedness of Borrower to Lender is paid in full and that if Lender is required by a court of competent jurisdiction to refund or repay to the Borrower or on behalf of the Borrower any amounts received in reduction or satisfaction of the indebtedness, then and in that event the liabilities of the Guarantor in regard to said amounts shall be reinstated and this Continuing Guaranty shall remain in full force and effect in respect thereto. Furthermore, Guarantor agrees that this Continuing Guaranty shall continue to be effective or shall be reinstated, as the case may be, at any time payment, or any part thereof, of principal or interest charges, or other related expenses of the obligations are rescinded or otherwise forgiven by Lender upon the bankruptcy or reorganization of Borrower or Guarantor.

Guarantor agrees to furnish to Lender within sixty (60) days after the end of the calendar year a complete financial statement of Guarantor certified by the Guarantor as being true and correct (in form and substance satisfactory to Lender), including a statement of income and expenses, liquidity, and a balance sheet indicating net worth.

Each provision hereof is intended to be severable and the invalidity or illegality of any portion of this Continuing Guaranty shall not affect the validity or legality of the remainder hereof.

**(SIGNATURE PAGE FOLLOWS)**

LENDER BY ITS ACCEPTANCE HEREOF AND GUARANTOR HEREBY VOLUNTARILY, KNOWINGLY AND INTENTIONALLY WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING ARISING UNDER THIS GUARANTY OR CONCERNING THE INDEBTEDNESS AND/OR COLLATERAL THEREFOR OR PERTAINING TO ANY TRANSACTION RELATED TO OR CONTEMPLATED THEREBY, REGARDLESS OF WHETHER SUCH ACTION OR PROCEEDING CONCERNS ANY CONTRACTUAL OR TORTIOUS OR OTHER CLAIM. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT TO THE LENDER IN EXTENDING CREDIT TO THE BORROWER, THAT THE LENDER WOULD NOT HAVE EXTENDED SUCH CREDIT WITHOUT THIS JURY TRIAL WAIVER, AND THAT GUARANTOR HAS BEEN REPRESENTED BY AN ATTORNEY OR HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY IN CONNECTION WITH THIS JURY TRIAL WAIVER AND UNDERSTAND THE LEGAL EFFECT OF THIS WAIVER.

This Amended and Restated Guaranty amends and restates the Continuing Guaranty executed by Guarantor in favor of Lender dated June 23, 2006.

IN WITNESS WHEREOF, Guarantor has executed this Amended and Restated Continuing Guaranty effective as of _____June 23_____, 2008.

Signed, sealed and delivered
in the presence of:

Print Name: _____

Print Name: _Isabelle Casbel_

_Camille Vitiello_
CAMILLE VITIELLO

Social Security No.: _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_

COMMONWEALTH OF MASSACHUSETTS          )
                                                                      ) SS:
COUNTY OF _Norfolk_                            )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by CAMILLE VITIELLO who is personally known to me or who has produced _Mass DL_ as identification.

WITNESS my hand and official seal in the County and State last aforesaid this __1__ day of _July_____, 2008.

_____
Notary Public

_____
Typed, printed or stamped name of Notary Public

My Commission Expires:

KATIE E. BOULAY
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires January 31, 2014