# EXHIBIT "D"

## CONTINUING GUARANTY

FOR VALUABLE CONSIDERATION, the undersigned (the "Guarantor") for itself, its successors and assigns, unconditionally guarantees to SEACOAST NATIONAL BANK (the "Lender"), and its successors, participants, endorsees and/or assigns, the due performance and full and prompt payment, whether at maturity, by acceleration, or otherwise, of any and all obligations and indebtedness of ACORN REAL ESTATE, LLC, a Florida limited liability company, and ACORN AT WILLOUGHBY, LLC, a Florida limited liability company (collectively, the "Borrower"), to Lender, including, but not limited to: (A) a loan from Lender to Borrower in the aggregate sum of $17,310,000.00 (the "Loan"), evidenced by: (i) that certain amended and restated promissory note in the amount of $15,500,000.00 from Borrower in favor of Lender dated even date herewith; and (ii) that certain future advance promissory note in the amount of $1,810,000.00 from Borrower in favor of Lender dated even date herewith; and (B) that certain letter of credit facility in the aggregate amount of $1,528,849.18 evidenced by a letter of credit reimbursement agreement from Borrower in favor of Lender dated even date herewith (collectively, the "Note").

The word "indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Borrower, heretofore, now, or hereafter made, incurred, or created, whether voluntary or involuntary, and however arising, whether due or not, absolute or contingent, liquidated or nonliquidated, and whether Borrower may be liable individually, or jointly with others, or whether recovery upon such indebtedness may be or hereafter becomes barred by any statute of limitations, or whether such indebtedness may be or hereafter becomes otherwise unenforceable. This is a Continuing Guaranty relating to said indebtedness, including that indebtedness arising under subsequent or successive transactions between Borrower and Lender and is not limited as to amount.

The obligations hereunder are joint and several and independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against Guarantor, whether or not action is brought against Borrower, Borrower may be joined in any such action or actions. If separate guaranties of the Borrower's indebtedness to Lender are executed by other guarantors, the obligations of Guarantor hereunder shall be joint and several with those of the other guarantors and may be enforced regardless of the enforcement of other guaranties. This is a guaranty of payment and not of collection.

Guarantor acknowledges and agrees with Lender that the indebtedness is a valid and binding obligation of Borrower. Guarantor authorizes Lender, without notice or demand, and without affecting its liability hereunder, from time to time, and on any number of occasions, to (a) renew, amend, compromise, extend, accelerate, reinstate, or otherwise change the time for payment of, or otherwise change the terms of, the indebtedness or any part thereof, including increasing or decreasing the interest rate thereon; (b) take and hold security for the payment of this Continuing Guaranty or the indebtedness, and exchange, enforce, waive and release any such security; (c) apply such security and direct the order or manner of sale thereof as Lender in its discretion may elect from time to time; and (d) release or substitute any one or more of the endorsers or guarantors. Guarantor acknowledges and agrees that no act or omission of any kind by Lender, including, but not limited to,

RECEIPT OF THE ORIGINAL
HEREBY ACKNOWLEDGED
BY _____
DATE  7/16/08

the failure to take or perfect a security interest in any security for the indebtedness shall affect or impair this Continuing Guaranty, and the Lender shall have no duties with respect thereof to Guarantor. Lender may without notice assign this Continuing Guaranty in whole or in part at any time.

Guarantor waives any right to require Lender to (a) proceed against Borrower; (b) proceed against or exhaust any security held from Borrower; or (c) pursue any other remedy whatsoever available to Lender. Guarantor waives any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of Borrower's liability or by reason of Lender releasing any security held from Borrower. Until all of Borrower's indebtedness to Lender shall have been paid in full, Guarantor shall have no right of subrogation, and Guarantor waives any right to enforce any remedy that Lender now has or may hereafter have against Borrower, and shall waive any benefit of, and any right to participate in, any security now or hereafter held by Lender. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of dishonor, and notices of acceptance of this Continuing Guaranty and of the existence, creation, or incurrence of new or additional indebtedness and all other defenses to any action or proceeding to enforce this Continuing Guaranty, except the single defense that the sum claimed has actually been paid to Lender. Guarantor covenants to cause Borrower to maintain and preserve the enforceability of any instruments now or hereafter executed in favor of Lender and to take no action of any kind that might be the basis for a claim that Guarantor has any defense hereunder other than payment in full of all Borrower's indebtedness to Lender. Guarantor hereby indemnifies Lender against any loss, cost, or expense by reason of the assertion by Guarantor of any defense hereunder based upon any such action or inaction of Borrower. Guarantor waives any right or claim of right to cause a marshalling of the Borrower's assets. No delay on the part of Lender in the exercise of any right, power or privilege under the terms of any documentation between Lender and Borrower or under this Continuing Guaranty shall operate as a waiver of any such privilege, power or right.

In addition to all liens upon, and rights to setoff against, the monies, securities or other property of Guarantor given to Lender by law, Guarantor agrees that Lender shall have a lien upon, and a right to setoff against, all monies, securities, and other property of Guarantor now or hereafter in possession of or on deposit with Lender, whether held in a general or special account of deposit, or for safekeeping or otherwise; and, every such lien and right to setoff may be exercised without demand upon or notice to Guarantor. No lien or right to setoff shall be deemed to have been waived by any act or conduct on the part of Lender, or by any neglect to exercise such right to setoff or to enforce such lien, or by any delay in so doing; and every right to setoff and lien shall continue in full force and effect until such right to setoff or lien is specifically waived or released by an instrument in writing executed by Lender.

Guarantor acknowledges and agrees with Lender that, until all of the Borrower's indebtedness to Lender have been paid in full, any and all indebtedness of Borrower now or hereafter held by Guarantor, is hereby subordinated to the indebtedness of Borrower to Lender; and such indebtedness of Borrower to Guarantor, if Lender so requests, shall be collected, enforced and received by Guarantor as trustees for Lender and be paid over to Lender on account of the indebtedness of

Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Continuing Guaranty.

Guarantor agrees to pay all attorneys' fees and all other costs and expenses that may be incurred or expended by Lender in the enforcement of Borrower's obligations and of this Continuing Guaranty, whether suit be brought or not, and if suit is brought, then for all services in trial and appellate courts.

Upon default of Borrower in any of its obligations or liabilities to Lender, or if Borrower or Guarantor shall become insolvent or make an assignment for the benefit of creditors or if a petition in bankruptcy or for corporate reorganization or for an arrangement be filed by or against Borrower or Guarantor (and any involuntary filing is not dismissed within ninety (90) days following filing), or if there is the appointment of a receiver for Borrower or for Guarantor or its property and same is not discharged within 90 days, or if a judgment is obtained or warrant of attachment issued against Borrower or Guarantor and same is not discharged within 90 days, all of the indebtedness, shall, without notice or demand, at the option of Lender, become immediately due and payable and shall be paid forthwith by Guarantor.

If the Borrower is a corporation or a partnership, it shall not be necessary for the Lender to inquire into the existence or powers of the Borrower, or the officers, directors, partners, or agents acting or purporting to act on the Borrower's behalf, and any indebtedness made or created upon the professed exercise of such existence or powers shall be guaranteed hereunder.

Guarantor hereby submits to the jurisdiction of the state and federal courts in the State of Florida for purposes of any action arising from or growing out of this Continuing Guaranty, and further agrees that the venue of any action may be laid in Palm Beach County or, if applicable, any other County in the State of Florida in which real property which secures any of the indebtedness is located. Nothing contained in this Continuing Guaranty, however, shall be deemed to constitute, or to imply the existence of, any agreement by Lender to bring any action only in said courts or to restrict in any way any of Lender's remedies or rights to enforce the terms of this Continuing Guaranty as, when and where Lender shall deem appropriate, in its sole discretion.

Notwithstanding any provision herein or in any instrument now or hereafter evidencing said indebtedness, the total liability for payments in the nature of interest under this Continuing Guaranty shall not exceed the limits imposed from time to time by applicable usury laws. This Continuing Guaranty shall be accepted at the offices of Lender in Palm Beach County, Florida, and for all purposes, be governed by and construed with the laws of the State of Florida.

Guarantor acknowledges that Lender has been induced by this Continuing Guaranty to extend the credit to Borrower creating the indebtedness, and that Lender would not have extended said credit without this Continuing Guaranty, and this Continuing Guaranty shall, without further reference or assignment, pass to, and may be relied upon and enforced by, any successor or participant or assignee of Lender.

Until the indebtedness is paid in full, no amounts paid under this Continuing Guaranty shall in any way or at any time entitle Guarantor to any right, claim or cause of action against the Borrower, or to any right, title or interest in or to any of the indebtedness or any rights of the Lender, or in or to any instruments or documents evidencing or securing or concerning the indebtedness, and Guarantor hereby waives, for the benefit of the Lender and the Borrower, any and all such rights (whether arising by way of subrogation, exoneration, reimbursement, participation, assignment, judicial decision, statute, constitutional provision, or otherwise) which Guarantor might otherwise have had in the absence of this waiver and which would have otherwise entitled Guarantor to be a "creditor" of the Borrower under the provisions of the U.S. Bankruptcy Code (Title 11, U.S. Code) or any other bankruptcy or insolvency law.

Guarantor acknowledges and agrees that this Continuing Guaranty shall remain in full force and effect for one year after the date all indebtedness of Borrower to Lender is paid in full and that if Lender is required by a court of competent jurisdiction to refund or repay to the Borrower or on behalf of the Borrower any amounts received in reduction or satisfaction of the indebtedness, then and in that event the liabilities of the Guarantor in regard to said amounts shall be reinstated and this Continuing Guaranty shall remain in full force and effect in respect thereto. Furthermore, Guarantor agrees that this Continuing Guaranty shall continue to be effective or shall be reinstated, as the case may be, at any time payment, or any part thereof, of principal or interest charges, or other related expenses of the obligations are rescinded or otherwise forgiven by Lender upon the bankruptcy or reorganization of Borrower or Guarantor.

Guarantor agrees to furnish to Lender within sixty (60) days after the end of the calendar year a complete financial statement of Guarantor certified by the Guarantor as being true and correct (in form and substance satisfactory to Lender), including a statement of income and expenses, liquidity, and a balance sheet indicating net worth.

Each provision hereof is intended to be severable and the invalidity or illegality of any portion of this Continuing Guaranty shall not affect the validity or legality of the remainder hereof.

LENDER BY ITS ACCEPTANCE HEREOF AND GUARANTOR HEREBY VOLUNTARILY, KNOWINGLY AND INTENTIONALLY WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING ARISING UNDER THIS GUARANTY OR CONCERNING THE INDEBTEDNESS AND/OR COLLATERAL THEREFOR OR PERTAINING TO ANY TRANSACTION RELATED TO OR CONTEMPLATED THEREBY, REGARDLESS OF WHETHER SUCH ACTION OR PROCEEDING CONCERNS ANY CONTRACTUAL OR TORTIOUS OR OTHER CLAIM. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT TO THE LENDER IN EXTENDING CREDIT TO THE BORROWER, THAT THE LENDER WOULD NOT HAVE EXTENDED SUCH CREDIT WITHOUT THIS JURY TRIAL WAIVER, AND THAT GUARANTOR HAS BEEN REPRESENTED BY AN ATTORNEY OR HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY IN CONNECTION WITH THIS JURY TRIAL WAIVER AND UNDERSTAND THE LEGAL EFFECT OF THIS WAIVER.

<u>Spring Guaranty</u>. Notwithstanding the foregoing provisions of this Guaranty, the Lender shall not pursue Lender's rights hereunder unless: (i) there is a bankruptcy filing by or against the Guarantor, Camille Vitiello, Franco Vitiello, Stephen F. Vitiello, either Borrower and/or Acorn Real Estate Development Corporation (there shall be a period of 90 days to cause any involuntary filing to be dismissed); and/or (ii) any of the parties referenced in subparagraph (i) above (or any of their owners or affiliates) file any action or counterclaim against the Lender including, without limitation, any action to challenge any of the loan documents securing the indebtedness and/or the enforceability thereof. The limitations set forth in this paragraph shall not limit the separate guaranty executed by Camille Vitiello individually.

**(SIGNATURE PAGE FOLLOWS)**

IN WITNESS WHEREOF, Guarantor has executed this Continuing Guaranty effective as of
_June 23_____, 2008.

Signed, sealed and delivered
in the presence of:

Print Name: _Katie Boulay_

Print Name: _Isabelle Taobel_

_Camille A. Vitiello Trustee Beacon Cutters Trust_
CAMILLE A. VITIELLO, as Trustee of
BEACON CUTTERS TRUST
Social Security No.: _____

COMMONWEALTH OF MASSACHUSETTS
~~STATE OF FLORIDA~~        )
                           ) SS:
COUNTY OF _NORFOLK_  )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State
aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was
acknowledged before me by CAMILLE A. VITIELLO, as Trustee of BEACON CUTTERS TRUST,
who is personally known to me or who has produced _MaDl_____ as identification.

WITNESS my hand and official seal in the County and State last aforesaid this _1_ day of
_July_____, 2008.

Notary Public

_____
Typed, printed or stamped name of Notary Public

My Commission Expires:

KATIE E. BOULAY
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires January 31, 2014

FTL:2740735:3
June 25, 2008

6

# EXHIBIT "E"

·3

Bk 25933 Pg231    #71583
07-25-2008 @ 11:05a

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Mark K. Somerstein, Esq.
Ruden, McClosky, Smith,
Schuster & Russell, P.A.
200 E. Broward Boulevard, Suite 1500
Fort Lauderdale, FL 33301

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA
CERTIFY
*William P O'Donnell*
WILLIAM P O'DONNELL, REGISTER

Space above this line for Recorder's Use

1676 Beacon St. Brookline

## SECOND MORTGAGE, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING[1]

This Mortgage, dated as of June 23, 2008, is given by CAMILLE A. VITIELLO, as Trustee of Beacon Cutters Trust under Declaration of Trust dated June 16, 1982, and recorded with the Norfolk Registry of Deeds in Book 6013, Page 274, with an address at 1676 Beacon Street, Brookline, Massachusetts 02445, as mortgagor ("Mortgagor"), to SEACOAST NATIONAL BANK, as mortgagee ("Mortgagee").

1.    **GRANT.**

(a)    The Property. For the purpose of securing payment and performance of the Secured Obligations defined in Section 2 below, Mortgagor hereby irrevocably and unconditionally grants, conveys, transfers and assigns to Mortgagee, with MORTGAGE COVENANTS, upon the STATUTORY CONDITION, and with the STATUTORY POWER OF SALE, all estate, right, title and interest which Mortgagor now has or may later acquire in the following property (all or any part of such property, or any interest in all or any part of it, together with the Personalty (as hereinafter defined) being hereinafter collectively referred to as the "Property"):

(i)    The real property located in the County of Norfolk County, Commonwealth of Massachusetts, as described in Exhibit A hereto (the "Land");

(ii)    All buildings, structures, improvements, fixtures and appurtenances now or hereafter placed on the Land, and all apparatus and equipment now or hereafter attached in any manner to the Land or any building on the Land, including all pumping plants, engines, pipes, ditches and flumes, and also all gas, electric, cooking, heating, cooling, air conditioning, lighting, refrigeration and plumbing fixtures and equipment (collectively, the "Improvements");

---

[1] Note: All recorded documents in Massachusetts must include the street address in the margin – address may be written in the margin manually.

FTL:2743146:7
July 14, 2008

1

26

(iii)    All easements and rights of way appurtenant to the Land; all crops growing or to be grown on the Land (including all such crops following severance from the Land); all standing timber upon the Land (including all such timber following severance from the Land); all development rights or credits and air rights; all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and shares of stock pertaining to such water or water rights, ownership of which affect the Land; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Land;

(iv)    All existing and future leases, subleases, subtenancies, licenses, occupancy agreements and concessions relating to the use and enjoyment of all or any part of the Land or the Improvements, and any and all guaranties and other agreements relating to or made in connection with any of the foregoing;

(v)    All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Land, Improvements, or the other property described above into cash or liquidated claims, including proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or the other property described above or any part of them; and

(vi)    All proceeds of, additions and accretions to, substitutions and replacements for, and changes in any of the property described above.

(b)    Fixture Filing.  This Mortgage constitutes a financing statement filed as a fixture filing under the Massachusetts Uniform Commercial Code, as amended or recodified from time to time, covering any Property which now is or later may become a fixture attached to the Land or any building located thereon.

2.    THE SECURED OBLIGATIONS.

(a)    Purpose of Securing.  Mortgagor makes the grant, conveyance, transfer and assignment set forth in Section 1, makes the irrevocable and absolute assignment set forth in Section 3, and grants the security interest set forth in Section 4, all for the purpose of securing the following obligations (the "Secured Obligations") in any order of priority that Mortgagee may choose:

(i)    Mortgagor's Guaranty dated even date herewith (the "Guaranty") of all obligations of ACORN REAL ESTATE, LLC, a Florida limited liability company, and ACORN AT WILLOUGHBY, LLC, a Florida limited liability company (jointly and severally, "Obligor") to Mortgagee including, without limitation, those obligations arising under the following instrument(s) or agreement(s) (the Guaranty and each of the following obligations are hereinafter collectively referred to as the "Debt Instrument"):

A.    (1) That certain amended and restated promissory note dated even date herewith payable by Obligor as maker in the stated principal amount of

Bk 25933    Pg 233 #71583

$15,500,000.00 to the order of Mortgagee; and (2) that certain future advance promissory note dated even date herewith payable by Obligor as maker in the stated principal amount of $1,810,000.00 to the order of Mortgagee.

      B.     That certain letter of credit reimbursement agreement dated even date herewith between Obligor and Mortgagee which provides for extensions of credit in an aggregate principal amount not exceeding $1,528,849.18.

      This Mortgage also secures payment of all obligations of Mortgagor and/or Obligor under the Debt Instrument which arise after the Debt Instrument is extended, renewed, modified or amended pursuant to any written agreement between Mortgagor and/or Obligor and Mortgagee, and all obligations of Mortgagor and/or Obligor under any successor agreement or instrument which restates and supersedes the Debt Instrument in its entirety;

      (ii)     Payment and performance of all obligations of Mortgagor under this Mortgage;

      (iii)     Payment and performance of all obligations of Obligor under any Swap Contract. "Swap Contract" means any document, instrument or agreement with Mortgagee, now existing or entered into in the future, relating to an interest rate swap transaction, forward rate transaction, interest rate cap, floor or collar transaction, any similar transaction, any option to enter into any of the foregoing, and any combination of the foregoing, which agreement may be oral or in writing, including, without limitation, any master agreement relating to or governing any or all of the foregoing and any related schedule or confirmation, each as amended from time to time; and

      (iv)     Payment and performance of all future advances and other obligations that Mortgagor (or any successor in interest to Mortgagor) or Obligor (if different from Mortgagor) may agree to pay and/or perform (whether as principal, surety or guarantor) to or for the benefit of Mortgagee.

      (b)     <u>Terms of Secured Obligations</u>. All persons who may have or acquire an interest in all or any part of the Property will be considered to have notice of, and will be bound by, the terms of the Debt Instrument described in Paragraph 2(a)(i) and each other agreement or instrument made or entered into in connection with each of the Secured Obligations. These terms include any provisions in the Debt Instrument which permit borrowing, repayment and reborrowing, or which provide that the interest rate on one or more of the Secured Obligations may vary from time to time.

      3.     <u>ASSIGNMENT OF RENTS</u>.

      (a)     <u>Assignment</u>. Mortgagor hereby irrevocably, absolutely, presently and unconditionally assigns to Mortgagee all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "Rents"), and confers upon Mortgagee the right to collect such Rents with or without taking possession of the Property. In the event that anyone

Bk 25933   Pg 234 #71583

establishes and exercises any right to develop, bore for or mine for any water, gas, oil or mineral on or under the surface of the Property, any sums that may become due and payable to Mortgagor as bonus or royalty payments, and any damages or other compensation payable to Mortgagor in connection with the exercise of any such rights, shall also be considered Rents assigned under this Paragraph.  THIS IS AN ABSOLUTE ASSIGNMENT, NOT AN ASSIGNMENT FOR SECURITY ONLY.

   (b)   Grant of License.  Notwithstanding the provisions of Paragraph 3(a), Mortgagee hereby confers upon Mortgagor a license ("License") to collect and retain the Rents as they become due and payable, so long as no Event of Default, as defined in Paragraph 6(b), shall exist and be continuing.  If an Event of Default has occurred and is continuing, Mortgagee shall have the right, which it may choose to exercise in its sole discretion, to terminate this License without notice to or demand upon Mortgagor, and without regard to the adequacy of the security for the Secured Obligations.

   4.   GRANT OF SECURITY INTEREST.  Mortgagor grants to Mortgagee a security interest in, and pledges and assigns to Mortgagee, all of Mortgagor's right, title and interest now or hereafter acquired in and to all of the following described personal property (collectively, the "Personalty"):

   (a)   All tangible personal property of every kind and description, whether stored on the Land or elsewhere, including, without limitation, all goods, materials, supplies, tools, books, records, chattels, furniture, fixtures, equipment, and machinery, and which in all cases is (i) used or useful or acquired in connection with any construction undertaken on the Land or the maintenance of the Land and the Improvements, or (ii) affixed or installed, or to be affixed or installed, in any manner on the Land or the Improvements;

   (b)   All crops growing or to be grown on the Land (including all such crops following severance from the Land); all standing timber upon the Land (including all such timber following severance from the Land); all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and shares of stock pertaining to such water or water rights, ownership of which affect the Land; and all architectural and engineering plans, specifications and drawings, and as-built drawings which arise from or relate to the Land or the Improvements;

   (c)   All general intangibles and rights relating to the Property, including, without limitation, all permits, licenses and claims to or demands for the voluntary or involuntary conversion of any of the Land, Improvements, or other Property into cash or liquidated claims, proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Mortgagee, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or other Property or any part of them;

   (d)   All deposit accounts from which Mortgagor may from time to time authorize Mortgagee to debit payments due on the Secured Obligations; all rights and interests

under all Swap Contracts, including all rights to the payment of money from Mortgagee under any such Swap Contracts; and all accounts, deposit accounts, and general intangibles, including payment intangibles, described in any such Swap Contracts;

(e)   All substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

5.   RIGHTS AND DUTIES OF THE PARTIES.

(a)   Representations and Warranties. Mortgagor represents and warrants that: (i) Mortgagor lawfully possesses and holds fee simple title to all of the Land and the Improvements as stated in Exhibit A and there are no liens or encumbrances other than the existing Mortgage and Security Agreement in favor of Citizens Bank of Massachusetts recorded in Norfolk Registry of Deeds in Book 23762, Page 599 ("First Mortgage"); and (ii) the First Mortgage: (x) has an outstanding principal balance not exceeding $672,000 and there is no future advance clause thereunder; and (y) is current, in good standing and without default thereunder.

(b)   Taxes, Assessments, Liens and Encumbrances. Mortgagor shall pay prior to delinquency all taxes, levies, charges and assessments, including assessments on appurtenant water stock, imposed by any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it. Mortgagor shall immediately discharge any lien on the Property which Mortgagee has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this Mortgage.

(c)   Damages and Insurance and Condemnation Proceeds.

(i)   Subject to the rights under the First Mortgage, Mortgagor hereby absolutely and irrevocably assigns to Mortgagee, and authorizes the payor to pay to Mortgagee, the following claims, causes of action, awards, payments and rights to payment (collectively, the "Claims"):

A.   all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use which affects all or part of the Property or any interest in it;

B.   all other awards, claims and causes of action, arising out of any breach of warranty or misrepresentation affecting all or any part of the Property, or for damage or injury to, or defect in, or decrease in value of all or part of the Property or any interest in it;

Bk 25933   Pg 236 #71583

C.     all proceeds of any insurance policies payable because of loss sustained to all or part of the Property, whether or not such insurance policies are required by Mortgagee; and

D.     all interest which may accrue on any of the foregoing.

(ii)     Mortgagor shall immediately notify Mortgagee in writing if:

A.     any damage occurs or any injury or loss is sustained to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced; or

B.     any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.

If Mortgagee chooses to do so, it may in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on breach of warranty or misrepresentation, or for damage or injury to, defect in, or decrease in value of all or part of the Property, and it may make any compromise or settlement of the action or proceeding. Mortgagee, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join Mortgagor in adjusting any loss covered by insurance.

(iii)     All proceeds of the Claims assigned to Mortgagee under this Paragraph shall be paid to Mortgagee. In each instance, Mortgagee shall apply those proceeds first toward reimbursement of all of Mortgagee's costs and expenses of recovering the proceeds, including attorneys' fees. Mortgagor further authorizes Mortgagee, at Mortgagee's option and in Mortgagee's sole discretion, and regardless of whether there is any impairment of the Property, (A) to apply the balance of such proceeds, or any portion of them, to pay or prepay some or all of the Secured Obligations in such order or proportion as Mortgagee may determine, or (B) to hold the balance of such proceeds, or any portion of them, in an interest-bearing account to be used for the cost of reconstruction, repair or alteration of the Property, or (C) to release the balance of such proceeds, or any portion of them, to Mortgagor. If any proceeds are released to Mortgagor, Mortgagee shall not be obligated to see to, approve or supervise the proper application of such proceeds. If the proceeds are held by Mortgagee to be used to reimburse Mortgagor for the costs of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition, or such other condition as Mortgagee may approve in writing. Mortgagee may, at Mortgagee's option, condition disbursement of the proceeds on Mortgagee's approval of such plans and specifications prepared by an architect satisfactory to Mortgagee, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen, and such other evidence of costs, percentage of completion of construction, application of payments, and satisfaction of liens as Mortgagee may reasonably require. Notwithstanding the foregoing: (i) no Event of Default exists hereunder or under any of the other Loan Documents; (ii) the Mortgagor obtains all permits to reconstruct the improvements; (iii) there are sufficient insurance proceeds (together with the Mortgagor's own funds) to reconstruct the improvements; (iv) the improvements can be rebuilt prior to the maturity date of the Note;

Bk 25933   Pg 237 #71583

and (v) all parties (including tenants) having an interest in the Property agree not to terminate their respective interest (including leases) in the Property as a result of the casualty, then the Mortgagee agrees to make the insurance proceeds available to the Mortgagor to reconstruct the improvements in the same manner as the Mortgagee would administer a construction loan. All costs associated with the foregoing shall be paid by the Mortgagor.

(d)    Insurance. Mortgagor shall provide and maintain in force at all times all risk property damage insurance (including, without limitation, flood, windstorm coverage, and hurricane coverage as applicable) on the Property and such other type of insurance on the Property as may be required by Mortgagee in its reasonable judgment. At Mortgagee's request, Mortgagor shall provide Mortgagee with a counterpart original of any policy, together with a certificate of insurance setting forth the coverage, the limits of liability, the carrier, the policy number and the expiration date. Each such policy of insurance shall be in an amount, for a term, and in form and content satisfactory to Mortgagee, and shall be written only by companies approved by Mortgagee. In addition, each policy of hazard insurance shall include a Form 438BFU or equivalent loss payable endorsement in favor of Mortgagee.

(e)    Maintenance and Preservation of Property.

(i)    Mortgagor shall keep the Property in good condition and repair and shall not commit or allow waste of the Property. Mortgagor shall not remove or demolish the Property or any part of it or initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it, except with Mortgagee's express prior written consent in each instance, which consent shall not be unreasonably withheld.

(ii)    If all or part of the Property becomes damaged or destroyed, Mortgagor shall promptly and completely repair and/or restore the Property in a good and workmanlike manner in accordance with sound building practices, regardless of whether or not Mortgagee agrees to disburse insurance proceeds or other sums to pay costs of the work of repair or reconstruction under Paragraph 5(c).

(iii)    Mortgagor shall not commit or allow any act upon or use of the Property which would violate any applicable law or order of any governmental authority, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property. Mortgagor shall not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Mortgagor on the Property or any part of it under this Mortgage.

(iv)    If Mortgagor's interest in the Property is a leasehold interest, Mortgagor shall observe and perform all obligations of Mortgagor under any lease or leases and shall refrain from taking any actions prohibited by any lease or leases. Mortgagor shall preserve and protect the leasehold estate and its value.

(v)    If the Property is a condominium, Mortgagor shall observe and perform all obligations of Mortgagor under the recorded covenants, conditions, and restrictions applicable to the Property, and under the bylaws of the condominium association and any rules

Bk  25933    Pg  238  #71583

or regulations thereunder.  As appropriate, the requirements under this Mortgage relating to maintenance of insurance and the preservation and maintenance of the Property may be performed by the condominium association on behalf of Mortgagor.

(vi)    If the Property is agricultural, Mortgagor shall farm the Property in a good and husbandlike manner.  Mortgagor shall keep all trees, vines and crops on the Property properly cultivated, irrigated, fertilized, sprayed and fumigated, and shall replace all dead or unproductive trees or vines with new ones.  Mortgagor shall prepare for harvest, harvest, remove and sell any crops growing on the Property.  Mortgagor shall keep all buildings, fences, ditches, canals, wells and other farming improvements on the Property in first class condition, order and repair.

(vii)    Mortgagor shall perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

(f)    Releases, Extensions, Modifications and Additional Security.    Without affecting the personal liability of any person, including Mortgagor (or Obligor, if different from Mortgagor), for the payment of the Secured Obligations or the lien of this Mortgage on the remainder of the Property for the unpaid amount of the Secured Obligations, Mortgagee may from time to time and without notice:

(i)    release any person liable for payment of any Secured Obligation;

(ii)    extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation;

(iii)    accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security;

(iv)    alter, substitute or release any property securing the Secured Obligations;

(v)    consent to the making of any plat or map of the Property or any part of it;

(vi)    join in granting any easement or creating any restriction affecting the Property;

(vii)    join in any subordination or other agreement affecting this Mortgage or the lien of it; or

(viii)    release the Property or any part of it from the lien of this Mortgage.

(g)    Release.  When all of the Secured Obligations have been paid in full and no further commitment to extend credit continues, Mortgagee shall release the Property, or so much of it as is then held under this Mortgage, from the lien of this Mortgage.

Bk 25933    Pg 239 #71583

(h)    Compensation and Reimbursement of Costs and Expenses.

(i)    Mortgagor agrees to pay reasonable fees, for any services that Mortgagee may render in connection with this Mortgage, including Mortgagee's providing a statement of the Secured Obligations together with interest thereon at the maximum rate permitted under applicable law to the extent not paid by Mortgagor within five (5) days following written request. Mortgagor shall also pay or reimburse all of Mortgagee's reasonable costs and expenses which may be incurred in rendering any such services.

(ii)    Mortgagor further agrees to pay or reimburse Mortgagee for all costs, expenses and other advances which may be incurred or made by Mortgagee to protect or preserve the Property or to enforce any terms of this Mortgage, including the exercise of any rights or remedies afforded to Mortgagee under Paragraph 6(c), to the extent such has not been satisfied by Mortgagor within ten (10) days following written notice from Mortgagee, whether any lawsuit is filed or not, or in defending any action or proceeding arising under or relating to this Mortgage, including attorneys' fees and other legal costs, costs of any sale of the Property and any cost of evidence of title.

(iii)    Mortgagor shall pay all obligations arising under this Paragraph immediately upon demand by Mortgagee. Each such obligation shall be added to, and considered to be part of, the principal of the Secured Obligations, and shall bear interest from the date the obligation arises at the rate provided in any instrument or agreement evidencing the Secured Obligations. If more than one rate of interest is applicable to the Secured Obligations, the highest rate shall be used for purposes hereof.

(i)    Exculpation and Indemnification.

(i)    Mortgagee shall not be directly or indirectly liable to Mortgagor or any other person as a consequence of any of the following:

A.    Mortgagee's exercise of or failure to exercise any rights, remedies or powers granted to it in this Mortgage;

B.    Mortgagee's failure or refusal to perform or discharge any obligation or liability of Mortgagor under any agreement related to the Property or under this Mortgage;

C.    Mortgagee's failure to produce Rents from the Property or to perform any of the obligations of the lessor under any lease covering the Property;

D.    any waste committed by lessees of the Property or any other parties, or any dangerous or defective condition of the Property; or

E.    any loss sustained by Mortgagor or any third party resulting from any act or omission of Mortgagee in operating or managing the Property upon exercise of the rights or remedies afforded Mortgagee under Paragraph 6(c), unless the loss is caused by the willful misconduct and bad faith of Mortgagee.

Bk 25933   Pg 240 #71583

Mortgagor hereby expressly waives and releases all liability of the types described above, and agrees that no such liability shall be asserted against or imposed upon Mortgagee.

(ii)   Mortgagor agrees to indemnify Mortgagee against and hold Mortgagee harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other costs and expenses which Mortgagee may suffer or incur in performing any act required or permitted by this Mortgage or by law or because of any failure of Mortgagor to perform any of its obligations. This agreement by Mortgagor to indemnify Mortgagee shall survive the release and cancellation of any or all of the Secured Obligations and the full or partial release of this Mortgage.

(j)   Defense and Notice of Claims and Actions.   At Mortgagor's sole expense, Mortgagor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Mortgage and the rights and powers of Mortgagee created under it, against all adverse claims. Mortgagor shall give Mortgagee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

(k)   Representation and Warranty Regarding Hazardous Substances.   Before signing this Mortgage, Mortgagor researched and inquired into the previous uses and ownership of the Property. Based on that due diligence, Mortgagor represents and warrants that to the best of its knowledge, no hazardous substance has been disposed of or released or otherwise exists in, on, under or onto the Property, except as Mortgagor has disclosed to Mortgagee in writing. Mortgagor further represents and warrants that Mortgagor has complied, and will comply and cause all occupants of the Property to comply, with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or hazardous substances ("Environmental Laws"). Mortgagor shall promptly, at Mortgagor's sole cost and expense, take all reasonable actions with respect to any hazardous substances or other environmental condition at, on, or under the Property necessary to (i) comply with all applicable Environmental Laws; (ii) allow continued use, occupation or operation of the Property; or (iii) maintain the fair market value of the Property. Mortgagor acknowledges that hazardous substances may permanently and materially impair the value and use of the Property. "Hazardous substance" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

(l)   Site Visits, Observation and Testing.   Mortgagee and its agents and representatives shall have the right at any reasonable time, after giving reasonable notice to Mortgagor, to enter and visit the Property for the purposes of performing appraisals, observing the Property, taking and removing environmental samples, and conducting tests on any part of the Property; provided, however, Mortgagee shall not conduct any testing unless Mortgagee shall have reason to believe that an adverse environmental condition exists with respect to the Property. Mortgagor shall reimburse Mortgagee on demand for the costs of any such

Bk 25933   Pg 241 #71583

environmental investigation and testing. Mortgagee will make reasonable efforts during any site visit, observation or testing conducted pursuant this Paragraph to avoid interfering with Mortgagor's use of the Property. Mortgagee is under no duty, however, to visit or observe the Property or to conduct tests, and any such acts by Mortgagee will be solely for the purposes of protecting Mortgagee's security and preserving Mortgagee's rights under this Mortgage. No site visit, observation or testing or any report or findings made as a result thereof ("Environmental Report") (i) will result in a waiver of any default of Mortgagor; (ii) impose any liability on Mortgagee; or (iii) be a representation or warranty of any kind regarding the Property (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness). In the event Mortgagee has a duty or obligation under applicable laws, regulations or other requirements to disclose an Environmental Report to Mortgagor or any other party, Mortgagor authorizes Mortgagee to make such a disclosure. Mortgagee may also disclose an Environmental Report to any regulatory authority, and to any other parties as necessary or appropriate in Mortgagee's judgment. Mortgagor further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to Mortgagor by Mortgagee or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Mortgagor) by Mortgagor without advice or assistance from Mortgagee.

6.   ACCELERATING TRANSFERS, DEFAULT AND REMEDIES.

(a)   Accelerating Transfers

(i)   "Accelerating Transfer" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any part of the Property or any interest in it, including any transfer or exercise of any right to drill for or to extract any water (other than for Mortgagor's own use), oil, gas or other hydrocarbon substances or any mineral of any kind on or under the surface of the Property. If Mortgagor is a trust, "Accelerating Transfer" also means any modification to the existing trust agreement.

(ii)   Mortgagor agrees that Mortgagor shall not make any Accelerating Transfer, unless the transfer is preceded by Mortgagee's express written consent to the particular transaction and transferee. Mortgagee may withhold such consent in its sole discretion. If any Accelerating Transfer occurs, Mortgagee in its sole discretion may declare all of the Secured Obligations to be immediately due and payable, and Mortgagee may invoke any rights and remedies provided by Paragraph 6(c) of this Mortgage.

(b)   Events of Default. The occurrence of any one or more of the following events, at the option of Mortgagee, shall constitute an event of default ("Event of Default") under this Mortgage:

(i)   Obligor and/or the Mortgagor fails to make any payment, when due, under the Debt Instrument, or any other default occurs under and as defined in the Debt Instrument or in any other instrument or agreement evidencing any of the Secured Obligations;

(ii)    Mortgagor fails to make any payment or perform any obligation which arises under this Mortgage within ten (10) days following notice (other than payment of insurance for which no additional notice or grace period shall be applicable);

(iii)    Mortgagor makes or permits the occurrence of an Accelerating Transfer in violation of Paragraph 6(a);

(iv)    Any representation or warranty made in connection with this Mortgage or the Secured Obligations proves to have been false or misleading in any material respect when made;

(v)    Any default occurs under any other mortgage on all or any part of the Property, including the First Mortgage, or under any obligation secured by such mortgage, whether such mortgage is prior to or subordinate to this Mortgage;

(vi)    An event occurs which gives Mortgagee the right or option to terminate any Swap Contract secured by this Mortgage; or

(vii)    An Event of Default occurs under the Amended and Restated Site Loan Agreement between Obligor and Mortgagee dated even date herewith.

(c)    Remedies.    At any time after the occurrence of an Event of Default, Mortgagee shall be entitled to invoke any and all of the rights and remedies described below, as well as any other rights and remedies authorized by law. All of such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

(i)    Mortgagee may declare any or all of the Secured Obligations to be due and payable immediately, and may terminate any Swap Contract secured by this Mortgage in accordance with its terms.

(ii)    Mortgagee may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

(iii)    Mortgagee, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and in its own name or in the name of Mortgagor sue for or otherwise collect any and all Rents, including those that are past due, and may also do any and all other things in connection with those actions that Mortgagee may in its sole discretion consider necessary and appropriate to protect the security of this Mortgage. Such other things may include: entering into, enforcing, modifying, or canceling leases on such terms and conditions as Mortgagee may consider proper; obtaining and evicting tenants; fixing or modifying Rents; completing any unfinished construction; contracting for and making repairs and alterations; performing such acts of cultivation or irrigation as necessary to conserve the value of the Property; and preparing for harvest, harvesting and selling any crops that may be growing on the property. Mortgagor hereby irrevocably constitutes and appoints Mortgagee as its attorney-in-fact to perform such acts and execute such documents as Mortgagee in its sole discretion may consider to be appropriate in connection with taking these measures, including endorsement of Mortgagor's name on any instruments. Mortgagor agrees to deliver to

FTL:2743146:7
July 14, 2008

Bk 25933  Pg 243 #71583

Mortgagee all books and records pertaining to the Property, including computer-readable memory and any computer hardware or software necessary to access or process such memory, as may reasonably be requested by Mortgagee in order to enable Mortgagee to exercise its rights under this Paragraph.

(iv)  Mortgagee may cure any breach or default of Mortgagor, and if it chooses to do so in connection with any such cure, Mortgagee may also enter the Property and/or do any and all other things which it may in its sole discretion consider necessary and appropriate to protect the security of this Mortgage. Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Mortgagee under, this Mortgage; paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Mortgagee's sole judgment is or may be senior in priority to this Mortgage, such judgment of Mortgagee to be conclusive as among the parties to this Mortgage; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under this Mortgage; otherwise caring for and protecting any and all of the Property; and/or employing counsel, accountants, contractors and other appropriate persons to assist Mortgagee. Mortgagee may take any of the actions permitted hereunder either with or without giving notice to any person.

(v)  Mortgagee may bring an action in any court of competent jurisdiction to foreclose this instrument or to obtain specific enforcement of any of the covenants or agreements of this Mortgage.

(vi)  Mortgagee may exercise the remedies contained in the Debt Instrument or in any other instrument or agreement evidencing any of the Secured Obligations.

(vii)  Mortgagee may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Mortgagee may sell the Personalty at a public sale to be held at the time and place specified in the notice of sale. It shall be deemed commercially reasonable for the Mortgagee to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties. Alternatively, Mortgagee may choose to dispose of some or all of the Property, in any combination consisting of both personal property and real property, in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by Article 9 of the Uniform Commercial Code. Mortgagor agrees that such a sale of personal property together with real property constitutes a commercially reasonable sale of the personal property.

(viii)  Mortgagee may exercise the STATUTORY POWER OF SALE.

(d)  <u>Application of Sale Proceeds and Rents.</u>

(i)  Mortgagee shall apply the proceeds of any sale of the Property in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs, fees and expenses of the sale, including costs of evidence of title in connection with the

Bk 25933    Pg 244 #71583

sale; and, second, to pay all other Secured Obligations in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto.

(ii)    Mortgagee shall apply any and all Rents collected by it, and any and all sums other than proceeds of any sale of the Property which Mortgagee may receive or collect under Paragraph 6(c), in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs and expenses of operation and collection that may be incurred by Mortgagee or any receiver; and, second, to pay all other Secured Obligations in any order and proportions as Mortgagee in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto. Mortgagee shall have no liability for any funds which it does not actually receive.

7.    MISCELLANEOUS PROVISIONS.

(a)    No Waiver or Cure.

(i)    Each waiver by Mortgagee must be in writing, and no waiver shall be construed as a continuing waiver. No waiver shall be implied from any delay or failure by Mortgagee to take action on account of any default of Mortgagor. Consent by Mortgagee to any act or omission by Mortgagor shall not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Mortgagee's consent to be obtained in any future or other instance.

(ii)    If any of the events described below occurs, that event alone shall not cure or waive any breach, Event of Default or notice of default under this Mortgage or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed); or impair the security of this Mortgage; or prejudice Mortgagee or any receiver in the exercise of any right or remedy afforded any of them under this Mortgage; or be construed as an affirmation by Mortgagee of any tenancy, lease or option, or a subordination of the lien of this Mortgage:

A.    Mortgagee, its agent or a receiver takes possession of all or any part of the Property;

B.    Mortgagee collects and applies Rents, either with or without taking possession of all or any part of the Property;

C.    Mortgagee receives and applies to any Secured Obligation proceeds of any Property, including any proceeds of insurance policies, condemnation awards, or other claims, property or rights assigned to Mortgagee under this Mortgage;

D.    Mortgagee makes a site visit, observes the Property and/or conducts tests thereon;

E.    Mortgagee receives any sums under this Mortgage or any proceeds of any collateral held for any of the Secured Obligations, and applies them to one or more Secured Obligations;

Bk 25933   Pg 245 #71583

F.     Mortgagee or any receiver performs any act which it is empowered or authorized to perform under this Mortgage or invokes any right or remedy provided under this Mortgage.

(b)     Powers of Mortgagee.  Mortgagee may take any of the actions permitted under Paragraphs 6(c)(ii) and/or 6(c)(iii) regardless of the adequacy of the security for the Secured Obligations, or whether any or all of the Secured Obligations have been declared to be immediately due and payable, or whether notice of default and election to sell has been given under this Mortgage.

(c)     Nonborrower Mortgagor.

(i)     If any Mortgagor ("Nonborrower Mortgagor") is not the Obligor under the Debt Instrument described in Paragraph 2(a)(i), such Nonborrower Mortgagor authorizes Mortgagee to perform any of the following acts at any time, all without notice to Nonborrower Mortgagor and without affecting Mortgagee's rights or Nonborrower Mortgagor's obligations under this Mortgage:

A.     Mortgagee may alter any terms of the Debt Instrument or any part of it, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Debt Instrument or any part of it;

B.     Mortgagee may take and hold security for the Debt Instrument, accept additional or substituted security for the Debt Instrument, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security;

C.     Mortgagee may apply any security now or later held for the Debt Instrument in any order that Mortgagee in its sole discretion may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale;

D.     Mortgagee may release Obligor of its liability for the Debt Instrument or any part of it;

E.     Mortgagee may substitute, add or release any one or more guarantors or endorsers of the Debt Instrument; and

F.     Mortgagee may extend other credit to Obligor, and may take and hold security for the credit so extended, whether or not such security also secures the Debt Instrument.

(ii)     Nonborrower Mortgagor waives:

A.     Any right it may have to require Mortgagee to proceed against Obligor, proceed against or exhaust any security held from Obligor, or pursue any other remedy in Mortgagee's power to pursue;

Bk 25933   Pg 246 #71583

B.    Any defense based on any legal disability of Obligor, any discharge or limitation of the liability of Obligor to Mortgagee, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that Nonborrower Mortgagor's obligations exceed or are more burdensome than those of Obligor;

C.    All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Mortgage and of the existence, creation, or incurring of new or additional indebtedness of Obligor, and demands and notices of every kind;

D.    Any defense based on or arising out of any defense that Obligor may have to the payment or performance of the Debt Instrument or any part of it; and

E.    Until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that the Mortgagee may have against Obligor, and all rights to participate in any security now or later to be held by Mortgagee for the Debt Instrument.

(iii)    Nonborrower Mortgagor assumes full responsibility for keeping informed of Obligor's financial condition and business operations and all other circumstances affecting Obligor's ability to pay and perform its obligations to Mortgagee, and agrees that Mortgagee shall have no duty to disclose to Nonborrower Mortgagor any information which Mortgagee may receive about Obligor's financial condition, business operations, or any other circumstances bearing on its ability to perform.

(iv)    No provision or waiver in this Mortgage shall be construed as limiting the generality of any other provision or waiver contained in this Mortgage.

(v)    For purposes of this Paragraph 7(c), all references to the Debt Instrument shall also include any instrument or agreement executed by Obligor subsequent to the date of this Mortgage which is secured by this Mortgage in accordance with the provisions of Paragraphs 2(a)(iii) and 2(a)(iv).

(d)    Merger.  No merger shall occur as a result of Mortgagee's acquiring any other estate in or any other lien on the Property unless Mortgagee consents to a merger in writing.

(e)    Joint and Several Liability.  If Mortgagor consists of more than one person, each shall be jointly and severally liable for the faithful performance of all of Mortgagor's obligations under this Mortgage.

(f)    Applicable Law.  This Mortgage shall be governed by the laws of the Commonwealth of Massachusetts.

Bk 25933    Pg 247 #71583

(g)    <u>Successors in Interest</u>.  The terms, covenants and conditions of this Mortgage shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties.  However, this Paragraph does not waive the provisions of Paragraph 6(a).

(h)    <u>WAIVER OF JURY TRIAL</u>. MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY AND ALL RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION (INCLUDING, BUT NOT LIMITED TO, ANY CLAIMS, CROSSCLAIMS OR THIRD-PARTY CLAIMS) ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS INSTRUMENT, THE OTHER LOANS OR THE TRANSACTIONS CONTEMPLATED HEREIN.  MORTGAGOR HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF MORTGAGEE OR MORTGAGEE'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT MORTGAGEE WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. MORTGAGOR ACKNOWLEDGES THAT MORTGAGEE HAS BEEN INDUCED TO ACCEPT INTO THIS INSTRUMENT BY, *INTER ALIA*, THE PROVISIONS OF THIS PARAGRAPH.

(i)    <u>Interpretation</u>.  Whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender. The captions of the sections of this Mortgage are for convenience only and do not define or limit any terms or provisions.  The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to."  The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations.  It further includes all principal, interest, prepayment charges, late charges, loan fees and any other fees and charges accruing or assessed at any time, as well as all obligations to perform acts or satisfy conditions.  No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Mortgage. The Exhibits to this Mortgage are hereby incorporated in this Mortgage.

(j)    <u>In-House Counsel Fees</u>.  Whenever Mortgagor is obligated to pay or reimburse Mortgagee for any attorneys' fees, those fees shall include the allocated costs for services of in-house counsel to the extent permitted by applicable law.

(k)    <u>Waiver of Marshaling</u>. Mortgagor waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to direct the order in which any of the Property will be sold in the event of any sale under this Mortgage. Each successor and assign of Mortgagor, including any holder of a lien subordinate to this Mortgage, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

(l)    <u>Waiver of Homestead</u>. Mortgagor hereby abandons and waives all claims of homestead on the Property and does hereby forever release and discharge the Property from any and all claims of homestead.

(m)    <u>Severability</u>.  If any provision of this Mortgage should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions

Bk 25933    Pg 248 #71583

and in no way affect the validity of this Mortgage except that if such provision relates to the payment of any monetary sum, then Mortgagee may, at its option, declare all Secured Obligations immediately due and payable.

(n)    Notices. Mortgagor hereby requests that a copy of notice of default and notice of sale be mailed to it at the address set forth below. That address is also the mailing address of Mortgagor as debtor under the Uniform Commercial Code. Mortgagee's address given below is the address for Mortgagee as secured party under the Uniform Commercial Code.

Addresses for Notices to Mortgagor:    Camille A. Vitiello, Trustee
1676 Beacon Street
Brookline, Massachusetts 02445

Address for Notices to Mortgagee:    Seacoast National Bank
815 Colorado Avenue
Stuart, Florida 34994

(o)    Spring Guaranty. Although this Mortgage will continue to secure the Secured Obligations with respect to the second lien priority of this Mortgage and the covenants, restrictions and Events of Default of this Mortgage shall continue to be applicable but notwithstanding any such defaults, it is understood and agreed that the Mortgagee shall not proceed to foreclose this Mortgage unless: (i) there is a bankruptcy filing by or against the Mortgagor, Camille Vitiello, Franco Vitiello, Stephen F. Vitiello, either Obligor and/or Acorn Real Estate Development Corporation and any involuntary filing is not dismissed within 90 days; and/or (ii) any of the parties referenced in subparagraph (i) above (or any of their owners or affiliates) file any action or counterclaim against the Mortgagee including, without limitation, any action to challenge any of the loan documents securing the Secured Obligations and/or the enforceability thereof.

(SIGNATURE PAGE FOLLOWS)

Bk 25933  Pg 249 #71583

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage as of the date first above written, intending to create an instrument executed under seal.

WITNESS:                                    MORTGAGOR:

_Ann Marie Hoffman_ _Owl Jas_              _Camille A. Vitiello Trustee of Beacon Cutter Trust_
_Jana Kesser_ _m hill_                      Camille A. Vitiello, as Trustee of
                                            Beacon Cutters Trust

COMMONWEALTH OF MASSACHUSETTS        )
                                     ) SS:
COUNTY OF ___Norfolk___              )

On this __1__ day of ___July___, 2008, before me, the undersigned notary public, personally appeared CAMILLE A. VITIELLO, as Trustee of BEACON CUTTERS TRUST, proved to me through satisfactory evidence of identification, which was ___MaDL___, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

_Katie E Boulay_
Notary Public

My Commission Expires: 

KATIE E. BOULAY
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires January 31, 2014

FTL:2743146:5
June 30, 2008

19

Bk 25933   Pg 250 #71583

EXHIBIT A TO MORTGAGE

the land with the building(s) thereon in Brookline, Massachusetts, situated on the Northwest side of Beacon Street, being numbered 1676 Beacon Street and shown as Lot 2 on a plan of land drawn by French and Bryant, dated August 25, 1899, recorded with the Norfolk Registry of Deeds in Book 851, Page 202, and more particularly bounded and described as follows:

EASTERLY by Lot 3, on said plan one hundred fifty (150) feet;

SOUTHERLY by Beacon Street, twenty-two (22) feet;

WESTERLY by Lot 1, one hundred fifty (150) feet; and

NORTHERLY by the middle line of a passageway ten (10) feet wide, twenty-two (22) feet.

Containing 3,300 square feet of land according to said plan.

Be any of all of said measurements more or less or however otherwise said premises may be bounded, measured or described.

Together with the right to use the passageway shown on the above mentioned plan for all purposes for which said passageways are now customarily used in the Town of Brookline, in common with others entitled thereto.

For title reference, see deed recorded at the Norfolk County Registry of Deeds in Book 7662, Page 181.

# EXHIBIT "F"

4

Bk 25933 Pg251 #71584
07-25-2008 @ 11:05a

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
LINDA PURRINGTON , FRP    954-527-2441

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

MARK K. SOMERSTEIN, ESQ.
RUDEN MCCLOSKY
P.O. BOX 1900
FORT LAUDERDALE, FL 33302

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA
CERTIFY

William P O'Donnell
WILLIAM P O'DONNELL, REGISTER

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
CAMILLE A. VITIELLO AS TRUSTEE OF THE BEACON CUTTERS TRUST

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1676 BEACON STREET | BROOKLINE | MA | 02445 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | TRUST | MASSACHUSETTS | ☑ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
SEACOAST NATIONAL BANK

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 815 COLORADO AVENUE | STUART | FL | 34994 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ALL MACHINERY, EQUIPMENT, FIXTURES AND OTHER PROPERTY OF EVERY KIND AND NATURE
WHATSOEVER OWNED BY DEBTOR OR IN WHICH DEBTOR HAS OR SHALL ACQUIRE AN INTEREST, NOW
OR HEREAFTER WITH RESPECT TO THE REAL PROPERTY DESCRIBED IN EXHIBIT A ANNEXED HERETO
AND INCORPORATED HEREIN BY REFERENCE (THE "REAL PROPERTY") AND TOGETHER WITH ALL OTHER
PROPERTY DESCRIBED IN EXHIBIT B ANNEXED HERETO AND INCORPORATED HEREIN BY REFERENCE.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
53659-0050

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

4

Bk 25933   Pg 252 #71584

RE:   **CAMILLE A. VITIELLO AS TRUSTEE OF THE BEACON CUTTERS TRUST**

EXHIBIT "A"

The land, together with the buildings thereon, known and numbered 1676 Beacon Street, Brookline, Norfolk County, Massachusetts, situated on the northwest side of Beacon Street, being shown as Lot 2 on plan entitled "Plan of Land in Brookline Mass. for Alexander C. MacKay" dated August 25, 1899 by French and Bryant, Engineers and recorded with the Norfolk County Registry of Deed in Book 851, Page 202, being more particularly bounded and described as follows:

EASTERLY          by Lot 3 as shown on said plan, one hundred fifty (150) feet;

SOUTHERLY        by Beacon Street, twenty two (22) feet;

WESTERLY          by Lot 1 as shown on said plan, one hundred fifty (150) feet; and

NORTHERLY        by the middle line of a passageway ten (10) feet wide, twenty two (22) feet.

Containing approximately 3,300 square feet according to said plan.

Together with the nonexclusive right to use the ten (10) foot passageway shown on the above referenced plan for all purposes for which said passageways are customarily used in the Town of Brookline in common with others entitled thereto

FTL:2803529:1
July 16, 2008

Bk 25933   Pg 253 #71584

RE:    CAMILLE A. VITIELLO AS TRUSTEE OF THE BEACON CUTTERS TRUST

EXHIBIT "B"

(a)    all easements and other rights now or hereafter made appurtenant to the real property described on Exhibit "A"' (the "Real Property");

(b)    all goods, inventory, intangible personal property, licenses (including without limitation, liquor licenses), apparatus, machinery, equipment, furnishings, fixtures, fittings, appliances and air conditioning and heating equipment, furniture, freezing equipment, and other property of every kind and nature whatsoever owned by Mortgagor/Debtor, or in which Mortgagor/Debtor has or shall have an interest, now or hereafter located upon the Real Property, or appurtenant thereto, and usable in connection with the Real Property, and the right, title and interest of Mortgagor/Debtor in and to any of the equipment, which may be subject to any security agreements (as defined in the Uniform Commercial Code);

(c)    all awards or payments, including interest thereon, which may be made with respect to the Real Property, whether from the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right), or for any other injury to or decrease in the value of the Real Property;

(d)    all leases and other agreements affecting the use or occupancy of the Real Property now or hereafter entered into and the right to receive and apply the rents, issues and profits of the Real Property, and any security deposits paid in connection therewith;

(e)    all rights of Mortgagor/Debtor in and to all present and future fire, flood, liability, windstorm, business interruption/rent loss and/or hazard insurance policies pertaining to all or any portion of the Real Property and/or any items covered by this instrument, including without limitation any unearned premiums and all insurance proceeds or sums payable in lieu of or as compensation for the loss of or damage to all or any portion of the Real Property and/or any items covered by this instrument;

(f)    the right (but not the obligation), in the name and on behalf of Mortgagor/Debtor, to appear in and defend any action or proceeding brought with respect to the Real Property and to commence any action or proceeding to protect the interest of the Mortgagee/Secured Party in the Real Property;

(g)    all tenements, hereditaments, easements, riparian or other rights  and appurtenances thereunto belonging or in any wise appertaining, including all right, title and interest of Mortgagor/Debtor in and to the underlying title of any roads or other dedicated area abutting the Real Property, and the reversions, remainders, rents, issues and profits thereof, and all after-acquired title of Mortgagor/Debtor in the Real Property;

(h)    all abstracts of title, contract rights, management, franchise and service agreements, accounts, occupancy permits and licenses, building and other permits, governmental approvals, licenses, agreements with utilities companies, water and sewer capacity reservation agreements, bonds, governmental applications and proceedings, feasibility studies, maintenance and service contracts, marketing agreements, development agreements, surveys, engineering work, architectural plans and engineering plans, site plans, landscaping plans, engineering contracts, architectural contracts, and all other contracts respecting the Real Property and all other consents, approvals and agreements which Mortgagor/Debtor may now or hereafter own in connection with the Real Property and/or any improvements constructed thereon, and all deposits, down payments and profits paid or deposited thereunder, now existing or hereafter obtained by or on behalf of Mortgagor/Debtor;

(i)    all sanitary and storm sewer, water and utility service agreements as to which Mortgagor/Debtor is a party or beneficiary;

(j)    all building materials, appliances and fixtures now owned or hereafter to be acquired by or on behalf of Mortgagor/Debtor and intended for use in the construction of or incorporated, annexed to, or located in, or to be incorporated in, annexed to, or located in the buildings and improvements to be constructed on the Real Property or any part thereof.  Said materials and personal property shall include but not be limited to lumber, plaster, cement, shingles, roofing, plumbing fixtures, pipe, lath, wallboard, cabinets, nails, sinks, toilets, furnaces, heaters, brick, tile, water heaters,

Bk 25933   Pg 254 #71584

RE:     CAMILLE A. VITIELLO AS TRUSTEE OF THE BEACON CUTTERS TRUST

screens, window frames, glass doors, flooring, paint, lighting fixtures and unattached refrigerating, cooking, heating and ventilating appliances and equipment, kitchen goods, hotel goods, restaurant goods, bar goods, tools, lawn equipment, floor coverings;

(k)     any monies and any escrow accounts established or accrued pursuant to that certain Mortgage encumbering the Real Property made by Mortgagor/Debtor in favor of Mortgagee/Secured Party;

(l)     any property or other things of value acquired with or paid for by any future advances pursuant to the said Mortgage;

(m)     all contracts of sale and purchase agreements respecting the Real Property, all contracts for deed and any notes and mortgages executed and delivered to Mortgagor/Debtor in connection with any contracts for deed otherwise, and any other contracts entered into by Mortgagor/Debtor respecting or relating in any manner to the Real Property;

(n)     all income and profits due or to become due under any contracts of sale or purchase agreements respecting the Real Property, now existing or hereafter obtained by or on behalf of Mortgagor/Debtor;

(o)     all refunds of property taxes relating to the Real Property;

(p)     all accounts receivable arising from operations conducted at the Real Property;

(q)     all of the water, sanitary and storm sewer systems now or hereafter owned by the Mortgagor/Debtor which are now or hereafter located by, over, or upon the Real Property or any part or parcel thereof, and which water system includes all water mains, service laterals, hydrants, valves and appurtenances, and which sewer system includes all sanitary sewer lines, including mains, laterals, manholes and appurtenances;

(r)     all of the right, title and interest of the Mortgagor/Debtor in and to any copyrights, trademarks, service marks, trade names, names of businesses, or fictitious names of any kind used in conjunction with the operation of any business or endeavor located on the Real Property;

(s)     all of Mortgagor/Debtor's interest in all utility security deposits or bonds on the Real Property or any part or parcel thereof;

(t)     any and all balances, credits, deposits, accounts or monies of the Mortgagor/Debtor and all guarantors and all other such properties and securities then or thereafter established with or in the possession of the Mortgagee/Secured Party;

(u)     all warranties, guaranties, instruments, documents, chattel papers and general intangibles relating to or arising from the foregoing collateral, now owned or hereafter acquired by Mortgagor/Debtor; and

(v)     any impact fee credits owned by Mortgagor/Debtor.

Together with all substitutions for, alterations, repairs and replacements of any of the foregoing and any and all proceeds (whether cash proceeds or non-cash proceeds), products, renewals, accessions and additions or any of the foregoing.

# EXHIBIT "G"

```
Bk 26114 Pg365  #99349
10-24-2008 @ 11:19a
```

This Document Prepared By and
When Recorded Return/Mail To:
Micah Mortgage Services, Inc.
Attn: Teresa Jones
1112 E. Copeland Rd., #230
Arlington, Texas 76011    (817) 701-2500

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA
CERTIFY
*William P O'Donnell*
WILLIAM P O'DONNELL, REGISTER

## ASSIGNMENT OF MORTGAGE

BE IT KNOWN THAT: SEACOAST NATIONAL BANK ("Assignor"), whose address is P.O. Box 9012, Stuart, Florida 34995-9012, hereby sells, transfers, assigns and conveys to **BMR FUNDING LLC** ("Assignee"), whose address is 2 Greenwich Plaza, 1st Floor, Greenwich, CT 06830, all right title and interest of Assignor in and to that certain "Second Mortgage, Assignment of Rents, Security Agreement and Fixture Filing" dated 06/23/2008 and the Note(s) described therein, given by CAMILLE A. VITIELLO, AS TRUSTEE OF BEACON CUTTERS TRUST to SEACOAST NATIONAL BANK, and recorded 07/25/2008 in Book 25933, Page 231 in the Register of Deeds Office of NORFOLK COUNTY, MASSACHUSETTS; together with any amendments, renewals, extensions or modifications thereto. This assignment is made without recourse, representation or warranty of any kind or nature except as otherwise stated in that certain Loan Sale Agreement, dated September 23, 2008, between Assignor and Assignee.

Executed by Assignor's duly authorized officer this _25th_ day of October, 2008.

SEACOAST NATIONAL BANK

By: _____

Name: _Russell Holland_

Title: _EVP_

Bk 26114   Pg 366 #99349

STATE OF _Florida_

COUNTY OF _Martin_

On this _24th_ day of October, 2008, before me, the undersigned authority, a Notary Public in and for said County and State, on this day personally appeared _____

_Russell Holland, EVP_ _____ of Seacoast National Bank, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

DEBRA POLICINO
Notary Public - State of Florida
My Commission Expires May 20, 2011
Commission # DD 676489
Bonded Through National Notary Assn.

Notary Public
My Commission Expires:

Bk 26114    Pg 367 #99349

## Legal Description

the land with the building(s) thereon in Brookline, Massachusetts, situated on the Northwest side of Beacon Street, being numbered 1676 Beacon Street and shown as Lot 2 on a plan of land drawn by French and Bryant, dated August 25, 1899, recorded with the Norfolk Registry of Deeds in Book 851, Page 202, and more particularly bounded and described as follows:

EASTERLY by Lot 3, on said plan one hundred fifty (150) feet;

SOUTHERLY by Beacon Street, twenty-two (22) feet.

WESTERLY by Lot 1, one hundred fifty (150) feet; and

NORTHERLY by the middle line of a passageway ten (10) feet wide, twenty-two (22) feet.

Containing 3,300 square feet of land according to said plan.

Be any of all of said measurements more or less or however otherwise said premises may be bounded, measured or described.

Together with the right to use the passageway shown on the above mentioned plan for all purposes for which said passageways are now customarily used in the Town of Brookline, in common with others entitled thereto.

For title reference, see deed recorded at the Norfolk County Registry of Deeds in Book 7662, Page 181.

# EXHIBIT "H"

Bk 26090 Ps556 #95873
10-10-2008 @ 02:16p

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Micah Mortgage Services, Inc.
Attn: John Miles
1112 E. Copeland Rd., Suite 230
Arlington, TX 76011

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA

CERTIFY

William P O'Donnell
WILLIAM P O'DONNELL, REGISTER

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #

Inst # 71584  Bk 25933, Pg 251 filed 7/25/2008

1b. THIS FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the ☑ REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☑ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | | | |
|---|---|---|---|
| 6a. ORGANIZATION'S NAME | | | |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | | | |
|---|---|---|---|
| 7a. ORGANIZATION'S NAME  BMR Funding, LLC | | | |
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2 Greenwich Plaza, 1st Floor | Greenwich | CT | 06830 | USA |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | | | |
|---|---|---|---|
| 9a. ORGANIZATION'S NAME  Seacoast National Bank | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

MA-Norfolk County        Micah # 10301

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

2
82

Bk 26090    Pg 557 #95873

## UCC FINANCING STATEMENT AMENDMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| 11. INITIAL FINANCING STATEMENT FILE # (same as Item 1a on Amendment form) |
|---|
| Inst # 71584  Bk 25933, Pg 251 filed 7/25/2008 |

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as Item 9 on Amendment form)

12a. ORGANIZATION'S NAME

OR    Seacoast National Bank

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

13. Use this space for additional information:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Debtor Name:

Camille A. Vitiello as Trustee of the Beacon Cutters Trust
1676 Beacon Street
Brookline, MA 02445

### Legal Description:

The land, together with the buildings thereon, known and numbered 1676 Beacon Street, Brookline, Norfolk County, Massachusetts, situated on the northwest side of Beacon Street, being shown as Lot 2 on plan entitled "Plan of Land in Brookline Mass. for Alexander C. MacKay" dated August 25, 1899 by French and Bryant, Engineers and recorded with the Norfolk County Registry of Deed in Book 851, Page 202, being more particularly bounded and described as follows:

EASTERLY          by Lot 3 as shown on said plan, one hundred fifty (150) feet;

SOUTHERLY      by Beacon Street, twenty-two (22) feet;

WESTERLY       by Lot 1 as shown on said plan, one hundred fifty (150) feet; and

NORTHERLY     by the middle line of a passageway ten (10) feet wide, twenty-two (22) feet.

Containing approximately 3,300 square feet according to said plan.

Together with the nonexclusive right to use the ten (10) foot passageway shown on the above referenced plan for all purposes for which said passageways are customarily used in the Town of Brookline in common with others entitled thereto.

LexisNexis Document Solutions
801 Adlai Stevenson Drive
Springfield, IL 62703-4261